HERMAN BAACKE ET AL. V. LIZZIE BAACKE ET AL.

FILED DECEMBER 16, 1896. No. 6856.

1. **Wills:** REVOCATION: IMPLICATION. The common-law doctrine that
   the revocation of a will may be implied from subsequent changes
   in the condition or circumstances of the testator obtains in this
   state in so far as it has not been modified by statute.

2. ———: ———: ———. An absolute revocation of a will cannot be
   implied by law from the obtaining of a divorce from the testator
   by his wife after the making of the will, the death of one of his
   children for whom provision was made in the will, and the birth
   of three children to such deceased child, prior to the testator's
   death.

ERROR from the district court of Lancaster county.
Tried below before TIBBETS, J. *Affirmed.*

*Abbott & Abbott*, for plaintiffs in error.

References: *Boudinot v. Bradford*, 2 Yeates [Pa.], 170;
*Hyster v. Young*, 3 Yeates [Pa.], 511; *Sneed v. Ewing*, 22
Am. Dec. [Ky.], 52; *Wilson v. Fosket*, 39 Am. Dec. [Mass.],
726; *Negus v. Negus*, 26 Am. Rep. [Ia.], 157; *Graves v.
Sheldon*, 15 Am. Dec. [Vt.], 660; *Young's Appeal*, 80 Am.
Dec. [Pa.], 518; *Vanorsdall v. Van Deventer*, 51 Barb. [N.
Y.], 147; *Heard v. Horton*, 1 Den. [N. Y.], 165.

*F. I. Foss* and *W. R. Matson, contra.*

NORVAL, J.

Carl Baacke, of Lancaster county, on the 16th day of December, 1887, executed a will which disposes of his property in the language following:

"1. After my decease, and after all my debts and funeral expenses have been paid out of my estate, the following heirs shall divide my estate as prescribed in paragraph 2:

"2. My present wife, Dorothea E. Baacke, shall receive as her share, first, such part as may be allowed her by court and law as my wife; secondly, she, Dorothea E. Baacke, shall receive out of my estate twenty-five dollars in cash, in addition. To my son, Fritz Baacke, I bequeath ten ($10) dollars. To my daughter, Elizabeth, now Mrs. Klepper, I bequeath ten ($10) dollars. To my son, Herman Baacke, I bequeath ten ($10) dollars; and the balance of my property I bequeath to the children of my son, Fritz Baacke, viz.: Elizabeth Sophia Margaretha Baacke, born October 24, 1880; Juliana Margaretha Baacke, born January 30, 1882; Maria Dorothea Baacke, born July 4, 1885; but on the condition that they pay off the sums by me specified, and divide the remainder equally between themselves.

"3. In case any one of my heirs shall oppose these conditions, or shall even appeal to law, then his legacy (share) shall consist of five ($5) dollars; no more."

On February 11, 1893, the testator died, and a few days later T. H. Miller filed in the county court said will, and asked that the same be admitted to probate. Herman Baacke, son of said Carl, on March 3, 1893, presented to the county court a petition, alleging therein that the instrument purporting to be the last will and testament of Carl Baacke had been revoked and annulled, and praying that letters of administration be granted on the estate to one Henry Cramer. Subsequently, Herman Baacke and Elizabeth Klepper, son and daughter of the deceased, pleaded in the county court certain matters

which they claimed amounted to a revocation of the will, and protested against the probate thereof. Upon the hearing the county court found that there had been a revocation of the will, refused to admit the instrument to probate, and appointed Henry Cramer administrator of the estate. An appeal was taken to the district court by the proponent, where the will was ordered to be probated. The contestants prosecute error to this court.

The record shows that Carl Baacke, at the time of the making of his will, had a wife, with whom he was then living; that subsequently she obtained a divorce from him, and her property rights were settled; that after the execution of the will, and prior to the death of the testator, three other children were born to his son Fritz, who survived their grandfather; and that said Fritz died about a year before the death of his father.

The statutory provisions in respect to the revocation of wills are contained in section 132, chapter 23, Compiled Statutes, and are as follows: "No will, nor any part thereof, shall be revoked unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil, in writing, executed as prescribed in this chapter; or by some other wording, signed, attested, and subscribed in the manner provided in this chapter for the execution of a will; excepting only that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the condition or circumstances of the testator." It is not claimed in this case that there has been any express revocation of the will by the testator in any of the modes pointed out in the statute. The sole question is whether the facts already mentioned, namely, the divorce of the wife, the death of the son, Fritz, and the birth to the latter of three children, operated as an implied revocation of the will. It cannot escape notice that the statute quoted provides that no will, or any part of the same, shall be revoked or

annulled by the testator unless he has performed some
one of the acts which the legislature has declared shall
constitute an express revocation, with the intent to re-
voke, with a clause saving revocations "implied by law
from subsequent changes in the condition or circum-
stances of the testator." By the language just quoted
the common law rule of revocation of wills by implication
is retained in this state, except as modified by statute.
Undoubtedly certain changes in the condition and cir-
cumstances of the testator will operate as a revocation.
Thus, a sale of the entire estate devised will have that
effect, since the will cannot thereafter take effect on it.
(29 Am. & Eng. Ency. of Law, 308, and cases there cited;
*Collup v. Smith*, 15 S. E. Rep. [Va.], 584; *Epps v. Dean*, 28
Ga., 533; *Bowen v. Johnson*, 6 Ind., 110.) So, too, a sale
of a part of the estate devised will work a revocation
*pro tanto.* (*Forney's Estate*, 161 Pa. St., 209; *Borden v.
Borden*, 2 R. I., 94; *Graham v. Burch*, 47 Minn., 171.) At
common law the will of a woman was revoked by her
subsequent marriage, upon the theory that coverture de-
stroyed her testamentary capacity to modify the will,
and hence the instrument could not be relied upon as
representing her wishes. (1 Jarmin, Wills [5th ed.], 167.)
And in some of the states, by express statutory pro-
visions, the same rule obtains. (*Blodgett v. Moore*, 141
Mass., 75; *In re Kaufman's Will*, 131 N. Y., 620; *Stewart
v. Powell*, 14 S. W. Rep. [Ky.], 496; *Corker v. Corker*, 87
Cal., 643; *Ellis v. Darden*, 86 Ga., 368.) Under statutes
like ours, which have removed most of the disabilities
of married women and conferred express power upon
them to dispose of their property by will, it has been
held that the common law doctrine of the revocation of
a will of a woman by her subsequent marriage is abro-
gated. (*In re Tuller's Will*, 79 Ill., 99; *In re Hunt's Will*,
81 Me., 275; *In re Ward*, 70 Wis., 251; *Noyes v. South-
worth*, 55 Mich., 172.) In this state, by section 123, chap-
ter 23, Compiled Statutes, a married woman may devise
and dispose of her real and personal estate by a will,

and revoke the will in the same manner as a man may do. At common law the will of an unmarried man was not revoked by his subsequent marriage or the subsequent birth of a child to him, but such marriage and birth conjointly worked a revocation of his will where no provision, in or out of the will, was made for the wife and child. (*Hoitt v. Hoitt*, 63 N. H., 475; *Bowers v. Bowers*, 53 Ind., 430; 4 Kent, Commentaries [13th ed.], 527; *Marston v. Roe*, 8 Ad. & L. [Eng.], 457; *Brady v. Cubitt*, 1 Doug. [Eng.], 31; *Christopher v. Christopher*, 4 Burr. [Eng.], 2182; *Havens v. Van Den Burgh*, 1 Den. [N. Y.], 27; *Baldwin v. Spriggs*, 5 Atl. Rep. [Md.], 295; *Roane v. Hollingshead*, 25 Atl. Rep. [Md.], 307; *Brush v. Wilkins*, 4 Johns. Ch. [N. Y.], 506; *Webb v. Jones*, 36 N. J. Eq., 163; *Belton v. Summer*, 12 So. Rep. [Fla.], 371; *Morton v. Onion*, 45 Vt., 145; *Nutt v. Norton*, 142 Mass., 242.) In some of the states the doctrine of the common law has been changed by legislation. (*Stewart v. Powell*, 14 S. W. Rep. [Ky.], 496; *Gay v. Gay*, 84 Ala., 38; *Rhodes v. Weldy*, 46 O. St., 234; *Holloman v. Copeland*, 10 Ga., 79; *Ware v. Wisner*, 50 Fed. Rep., 310.) Manifestly, decisions based on statutes which expressly provide that a will shall be revoked by either marriage or the birth of a child are not applicable under the legislation of this state. It has been held that the revocation of a will cannot be implied by law from the subsequent acquisition of property by the testator, which is not affected by the will. (*Baldwin v. Spriggs*, 65 Md., 373.) "The more generally accepted view seems to be that a change in the testator's condition and circumstances, as the death of his wife or children, or the objects of his bounty, the increase or decrease of his fortune, or the alienation of his property, will not work a total revocation of the will." (29 Am. & Eng. Ency. of Law, 313, and cases in note 3.)

While our statute recognizes revocations of wills by implication of law, it has not undertaken to designate or specify what subsequent changes in the condition and circumstances of the testator will produce such

revocation, but it is for the court to determine from the facts of each particular case, under the rules and forms of law, whether the testator intended the will to stand notwithstanding the changes in his condition and circumstances. To show that the present case does not fall within the exception of the statute respecting the revocation of wills by implication of law, we have already mentioned certain facts which courts have held to constitute such revocation, and also have instanced some of the changes in the condition of a testator from which a revocation of a will cannot be implied. The doctrine of revocation by implication of law is based upon a presumed alteration of intention arising from the changed condition and circumstances of the testator, or on the presumption that the will would have been different had it been executed under the altered circumstances. An entire revocation by implication of law does not extend to a large number of cases. Change of circumstances may work a partial revocation, and the will in other respects stands as it is written.

No case has been cited, nor has the writer been able to find a single authority, which holds that a subsequent granting of a divorce to the wife of a testator, and a settlement of her property rights, work a revocation. It could no more than revoke the will as to her legacy, and whether it would have that effect in this case it is not necessary now to determine, as the question is not before us.

The death of the testator's son could have no effect, since it was a contingency that must have been contemplated by the testator. Especially is this true in view of our statute (Compiled Statutes, ch. 23, sec. 151), which declares that "when a devise or legacy shall be made to any child or other relation of the testator, and the devisee or legatee shall die before the testator, having issue who shall survive the testator, such issue shall take the estate so given by the will in the same manner as the devisee or legatee would have done if he had survived the testa-

tor, unless a different disposition shall be made or directed by the will." The legacy provided by the will for the testator's son Fritz did not lapse by the death of the latter, as he left several surviving children, who, by virtue of the above statute, would take the same.

But one other ground relied upon for a revocation remains to be considered, and that is the birth of the three children to Fritz Baacke after the making of the will. We have already observed that at common law a revocation will not be implied from the birth of a posthumous child, and clearly, from analogy, the subsequent birth of the grandchildren did not revoke the will. This view is emphasized by the legislation in this state upon the subject. Section 148 of said chapter 23 declares: "When any child shall be born after the making of his parent's will, and no provision shall be made therein for him, such child shall have the same share in the estate of the testator as if he had died intestate, and the share of such child shall be assigned to him as provided by law in case of intestate estate, unless it shall be apparent from the will that it was the intention of the testator that no provision should be made for such child." The next succeeding section provides: "When any testator shall omit to provide in his will for any of his children, or for the issue of any deceased child, and it shall appear that such omission was not intentional, but was made by mistake or accident, such child, or the issue of such child, shall have the same share in the estate of the testator as if he had died intestate, to be assigned as provided in the preceding section." The succeeding section in the same chapter provides the manner for assigning of the estate in the cases mentioned in the section quoted above. It is obvious from these statutory requirements it was not the intention of the legislature that the omission of a testator to make any provision in his will for a posthumous child, or for the issue of a deceased child, should work an entire revocation of the will, else the legislature would not have provided for the assignment of the estate

in such cases so as to allow such child or issue of a deceased child omitted from the will, as the case may be, to take the share he would have received had the testator died intestate. The statute having expressly declared what effect the subsequent birth of an heir prior to the testator's death would have on a will, none other can be implied. We are aware of no case where the birth of a grandchild after the making of a will is held to operate as a total revocation of the will. We are constrained to hold that there has not been an entire revocation of the will of Carl Baacke by implication of law, and the decree of the lower court allowing and admitting it to be probated should be affirmed.

DECREE AFFIRMED.