Hill v. Hill.

FILED APRIL 11, 1921.   No. 21132.

1. **Wills: REVOCATION BY IMPLICATION.** Fifteen years elapsed between the date of the execution of a will and the death of the testator. The will provided that his wife, whose death preceded his by about two years, should have as her share of the estate "the provisions made by law for her." In the interim a section of farm land in Canada was purchased that was not devised by

Hill v. Hill.

the will. A life estate in a house and lot was devised to an only daughter, of the value of $5,000 or $6,000, which the testator subsequently sold; he also devised a life estate in 190 acres of land to his daughter's only son, with remainder to her in event that her son died childless. When the will was executed the testator had practically no personal property, but he then owned 1,000 acres of farm land worth about $50,000; when he died he had about $25,000 in money and owned property worth more than a quarter of a million dollars. *Held*, that the "changes in the conditions or circumstances of the testator" did not, under section 1295, Rev. St. 1913, work a revocation of the will by implication of law.

2. ———: ———. "The common-law doctrine that the revocation of a will may be implied from subsequent changes in the conditions or circumstances of the testator obtains in this state in so far as it has not been modified by statute." *Baacke v. Baacke*, 50 Neb. 18.

3. ———: ———. There is no fixed rule by which the revocation of a will may be implied from subsequent changes in the condition or circumstances of the testator. Each case must be governed by its own peculiar facts.

4. ———: DEVISE: PERPETUITIES. Where a testator devises a life estate in land to a married son and upon his son's death a life estate in a part of the same land is devised to "his wife, if living," the son's wife being alive when the will was executed and when the testator died, the words "his wife" relate solely to the then present wife of the son and she would take upon the death of her husband. *Held*, that such devise to the wife does not violate the rule against perpetuities.

5. ———: CONSTRUCTION. In the construction of a will, the intention of the testator, as disclosed by the language used therein, considered in connection with the surrounding circumstances, will govern, provided that, in so doing, no rule of law is violated or sound policy disturbed. *Lesiur v. Sipherd*, 84 Neb. 296.

6. ———: DEVISE: PERPETUITIES. The rule against perpetuities is not violated, unless the testator devises his land so that an estate therein is created that will vest beyond a life or lives in being and 21 years thereafter, and the period of gestation.

7. ———: ———: ———. A succession of life estates devised to the children of unborn children *ad infinitum*, if permitted, might prevent the alienation of lands for generations. Hence, the rule against perpetuities.

APPEAL from the district court for Richardson county: JOHN B. RAPER, JUDGE. *Affirmed as modified.*

Hill v. Hill.

*Burkett, Wilson, Brown & Wilson* and *J. R. Wilhite,* for appellants.

*Fawcett & Mockett, Kelligar, Ferneau & Gagnon* and *C. J. Campbell, contra.*

DEAN, J.

Elijah Curtis Hill, Sr., widower, died in Richardson county April 1, 1916, aged 84 years. He was then the owner of 1,000 acres of land in the county of his residence, a section of land in Canada, and personal property, all valued at more than a quarter of a million dollars. As his next of kin and heirs at law he left him surviving five sons, namely, Roland M., Reuben J., Marshall N., Ulysses Grant, and Elijah Curtis Hill, Jr., and a married daughter, Martha Ann Talley. His will was executed August 17, 1900. On May 28, 1901, he added thereto a codicil. The testator's sons, Roland M., Reuben J., Marshall N., Ulysses Grant, and Martha Ann Talley began this action against Elijah Curtis Hill, Jr., executor of the will, to have the will declared null and void. Plaintiffs also caused 29 grandchildren, and the spouses of such as were married, to be made parties defendant. Some of the grandchildren were minors and appeared by guardians *ad litem.* The testator's children are all married and each one is the parent of two or more children. The district court held the will in all respects valid. From the judgment so rendered plaintiffs appealed.

The grounds on which plaintiffs base their contention that the will is invalid will be discussed separately. In their brief they first argue that "the changed conditions of the nature, amount, and value of the property of the deceased between the making of the will in 1900 and his death in 1916 constitute a revocation under the law."

The changed conditions and circumstances of the testator, and of his property, as alleged by plaintiffs in the present case, that occurred subsequent to the making of the will, with the exception of a devise to Mrs. Talley that will be presently noted, are substantially these: His

wife died about 14 years after the will was written and about two years before he died; that "the property had changed in its proportions by the elimination of the wife's dower and homestead;" that the section of Canada land was purchased; that when he made the will the 1,000 acres of Richardson county land was worth about $50,000, and that he then had practically no personal property; that when he died, in 1916, he had about $25,000 in cash, and was then the owner of property valued at about a quarter of a million dollars, and that its value was greatly increased when the case was tried.

Plaintiffs cite section 1295, Rev. St. 1913, which, after providing generally how a will may be revoked, concludes with an exception, namely, that nothing contained in section 1295 "shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator." They rely on the exception in the act.

In support of their argument on revocation by implication of law plaintiffs cite several cases, but they apparently rely on *Stender v. Stender*, 181 Mich. 648. That case fairly embodies the theory that is discussed in the other citations. Stender was the owner of about $200,000 worth of property, nearly all consisting of real estate. He was unmarried, and died 16 months after he executed his will. To his brother, Carl, he bequeathed practically all of his personal property, including a cigar manufacturing business. To Carl, William and Emil and to his sister, Thusnelda, and to the children of Mathilda, a deceased half sister, he bequeathed the residue of his estate, namely, one-fifth to each of his three brothers and his sister, respectively, and one-fifth to the children of his deceased half sister as representative of their mother. The persons named were his nearest surviving relatives. Between the date of the will and the date of his death the testator sold about $150,000 worth of real estate. Carl claimed the proceeds of the real estate under the will, but was defeated in the circuit court, and on appeal the judgment

Hill v. Hill.

was affirmed. The court said that there was nothing to show that Stender's intention to dispose of his estate was changed, "so that one brother should receive approximately $160,000 and the other four brothers and sisters only $10,000 each." In the *Stender* case it is obvious that, if Carl's plea had prevailed, the intention of the testator with respect to the body of his estate would have been defeated. The bequest of the cigar business, and some other personalty, to his brother, Carl, was the testator's only departure from the intention, plainly apparent throughout his will, to distribute the body of his estate equally among those who were his nearest of kin. And the court so interpreted the will that, in the distribution of the estate, notwithstanding changed conditions in the property, the manifest intention of the testator was executed.

Neither the *Stender* case nor the other cases cited by plaintiffs on this point, that are in substantial accord with it, are applicable to the facts before us, except as they hold to the fundamental rule that the intention of the testator as disclosed by the language of the will shall, within the bounds of the law, control in the interpretation of that instrument. *Lesiur v. Sipherd,* 84 Neb. 296.

New Hampshire has a statute on this subject that is substantially the same as ours. Gen. Laws N. H. 1878, ch. 193, secs. 14, 15. The act was construed in *Hoitt v. Hoitt,* 63 N. H. 475. The court said: "The revocation of a will is not effected by the death of legatees or devisees named in it; nor by the marriage of the testator, there being no issue of the marriage; nor by the alienation of the larger portion of his estate, which was specifically disposed of by the will; nor by the acquisition of other estate to an amount much greater than he possessed at the time the will was made; nor by the concurrence of all the above circumstances." 40 Cyc. 1210; *Forney's Estate,* 161 Pa. St. 209; *Borden v. Borden,* 2 R. I. 94. The present case seems fairly to come within the rule announced in the *Hoitt* case.

The common-law rule that a will may be revoked by implication of law, in a proper case, obtains in this state, except as modified by statute. *Baacke v. Baacke,* 50 Neb. 18. But there is no well-defined rule by which such revocation may .in all cases be determined. The weight of authority, in the jurisdictions where the rule obtains, is that each case shall be governed by its own peculiar facts. It is clear that the revocation of the will before us cannot be implied from subsequent changes in the condition or circumstances of the testator.

The parties ask that the will be construed. In the present case the testator devised a life estate in his Nebraska land to each of his five sons and to one grandson. The devises vary from 110 to 250 acres to each devisee. A few of his grandchildren were substantially remembered in his will, as remaindermen, while many of them were not named therein. He expressly declared in his will that the grandchildren who were not named were "purposely and intentionally" omitted, and that such omission "was not through any accident or mistake." When he died, and when the case was tried, there were living grandchildren, of the respective classes, that is to say, male and female, whom he named as remaindermen, and all were capable of taking under the will.

Plaintiffs assail the several devises of the will separately. On this assignment they allege these grounds: "Because the will is unjust and disinherits natural heirs, contrary to the expressed intention of the testator by the will itself. Because the will itself is an incompetent and void one under the law, in that it provides for limitations over after the vesting of the fee; that it cannot be interpreted and executed; that it violates the law of perpetuities; that it entails estates, to an extent, and in a manner which violates our public policy, and is contrary to law; and that in some instances the fee title is not vested."

In the body of the will the testator bequeathed to .his daughter, Mrs. Talley, a $2,000 bequest. In a codicil,

Hill v. Hill.

written about one year after the date of the will, he devised a life estate in a Lincoln residence property to her to take the place of this bequest. Subsequently he sold the Lincoln property for $5,000 or $6,000, and the proceeds were invested in the Canada section of land, or became a part of the residue of the testator's estate. Plaintiffs' complaint on this point is that the will "disinherits natural heirs;" that being a part of their argument that is hereinbefore pointed out, and that is also applied by them to other parts of the will.

With respect to Mrs. Talley, plaintiffs' objection seems to be without merit. It seems that she was twice married and that Carl Van Fleet is a son by a former marriage. Carl had attained his majority when his grandfather died. To this grandson the testator devised a life estate in 190 acres of his land, with the provision, and another that will be noticed presently, that his daughter, Mrs. Talley, should be the remainderman in case Carl should die childless.

It appears, however, that Mrs. Talley made a settlement after suit was begun by accepting $4,000 in cash from her brother, Elijah, and $8,000 from her son, Carl, and to the latter she executed a quitclaim deed to the 190-acre tract of land, conveying to him her contingent interest therein. Following this settlement she withdrew from the case, as one of the plaintiffs, and joined the defendants in resisting the claims of the remaining plaintiffs. Hence, this feature of the case, so far as Mrs. Talley is personally concerned, appears to be a closed incident. On this point the court found that she "was the only living remainderman, and as such owned a vested remainder interest therein," and that, by her quitclaim deed to Carl, "the fee simple title * * * became merged and vested in * * * Carl Van Fleet."

It appears, however, that, if Carl dies childless, the land shall, under the will, vest in Mrs. Talley, his mother. It plainly appears, from the will, that it was the intention of the testator that Carl should take a life estate, and that

the fee title should vest in his unborn children, if any he should have. So that, under the terms of his grandfather's will, Carl takes a life estate in the land devised to him, and by the conveyance from his mother he takes the interest that was devised to her. These estates are therefore merged. To that extent, with respect to the devise to Carl Van Fleet, the judgment must be modified. Whether the rights of such contingent remaindermen have been destroyed by the deed from Mrs. Talley to her son is a question we are not called upon, in the present state of the record, to determine at this time. Such contingent remaindermen are not parties and their rights are not represented in the present case by any class or by any party to this suit.

With respect to the devising clauses of the will the court found: "That said paragraphs 5 to 10, both inclusive, * * * devise a life estate to the sons and grandsons respectively" of the testator, "with remainder as to each of said devisees, as stated" in the will; that by paragraph 9 the testator "lawfully devised to the defendant Elijah Curtis Hill, Jr., the lands therein described, for and during the term of his natural life, and at his death to his male children or male child, if he should leave any, or in the event of there being no male child or children surviving the said Elijah Curtis Hill, Jr., then to his female child or children then living;" that, when the testator died, and when the decree herein was entered, Elijah Curtis Hill, Jr., and "two female children * * * were living, to wit, Marguerete Hill and Aileene Hill, who are the only children of said Elijah Curtis Hill, Jr., living" when the testator died, or at the present time; that, when the testator died, Elijah Curtis Hill, Jr., under the will "became vested, *eo instante*, with a life estate in the said lands above described, and the said Marguerete Hill and Aileene Hill became, *eo instante*, the owners of a vested remainder in said lands, subject to and burdened only with the life estate of their father; * * * that the said Elijah Curtis Hill, Jr., and the said Marguerete Hill,

Hill v. Hill.

and Aileene Hill are entitled to a decree quieting in them their title to such interests in said lands. It is therefore considered, adjudged and decreed by the court that the will of said Elijah Curtis Hill, deceased, is a valid will. That paragraphs 5 to 10, inclusive, of said will are valid devises to the sons and grandson therein named."

The will with respect to the life estate in the 250-acre tract of land that is devised to Elijah Curtis Hill, Jr., provides, as we have seen, that at his death the fee title thereto shall vest in his male child or children, as the case may be, share and share alike, but that, if he "shall only have female children or (a) female child," such child, or children, shall take the fee simple title share and share alike. It follows that the fee title of Marguerete and Aileene Hill is contingent upon the failure of the birth of a male child, or children, or of a daughter or daughters to Elijah Curtis Hill, Jr. To that extent the judgment must be modified with respect to the devise to Marguerete and Aileene Hill. More than this, it is not incumbent upon us at this time to decide with respect to the nature or extent of the contingent estate taken under the will by Marguerete and Aileene Hill.

In paragraph 9, with respect to the wife of his son Elijah, the testator provided that, if Elijah "shall die without leaving issue of his body capable of inheriting," "his wife if living shall have a life estate in one-third" of the land in which Elijah had a life estate. On this point plaintiffs argue that in the course of events Elijah Curtis Hill, Jr., might marry a wife who is not yet born. They say: "This provision of the will gives this land for life to Elijah, Jr., and then a life estate to his wife, who, under these circumstances, was born after the testator's death," and that if such wife "should live more than twenty-one years and nine months after the death of Elijah, Jr., then it would be longer than allowed by the statute of perpetuities." This point is not well taken. Elijah's wife was living when the testator's will was written and was living when he died. Under such cir-

cumstances the language of the will, in the connection that it is there used, and referring as it does to "his wife if living," cannot be construed to mean any other person than the then present wife of the testator's son Elijah. 40 Cyc. 1456; *In re Mook's Estate,* 167 N. Y. Supp. 170. It may be added that she was living when the case was tried.

Plaintiffs contend that the will "entails estates;" that it "violates the law of perpetuities," and the law against primogeniture. They point out that in some instances the testator in the disposal of his bounty preferred his male grandchildren, present and prospective. Even so, he had a lawful right, in the bestowal of his bounty, to prefer one class of heirs to the exclusion of another class. 21 R. C. L. 307, 308, secs. 35, 36. The will is the testator's. We cannot, of course, make a will for him, but must, if possible, find out the testator's intention from its every word and part, to the end that, if valid, it may be upheld.

The rule against perpetuities is not violated, unless the testator devises his land so that an estate therein is attempted to be created that will vest beyond a life or lives in being and 21 years thereafter, and the period of gestation. This of course cannot be done lawfully. In the present case we are unable to find from the language of the will that the testator even attempted to do so. The theory of the rule against perpetuities is that a succession of life estates devised to the children of unborn children *ad infinitum,* if permitted, would create such an entailment of estates that the alienation of lands might thereby be prevented for generations. The rule prevents such contingency and prohibits the vesting of estates beyond the time herein named.

In discussing the object and scope of the rule against perpetuities, in 21 R. C. L. 287, 288, secs. 9, 10, it is said: "The courts have always experienced difficulty in expressing in explicit terms the definition of a perpetuity, and it has even been asserted that a strictly accurate definition has never been given. Perpetuities have been variously

Hill v. Hill.

defined, and the rule against them has been expressed with quite as much variety.  *  *  *  The immediate object of the rule against perpetuities is to require the vesting of the future estates within a limited period of time after their creation and to bar the creation of future interests depending on remote contingencies.  The fundamental policy of the law embodied in this rule is to prevent property from being tied up in such a manner as to be inalienable, or in such a way as to be taken out of commerce and the general circulation of property."

With respect to the argument on primogeniture, we deem it sufficient to say that the will fails to disclose an attempt by the testator to devise his lands to the eldest son or eldest grandson "in preference to the other children."  Bouvier's Law Dictionary (Rawles' Revision) 740; Webster's New International Dictionary.

In passing it may be noted that defendants argue that plaintiffs are estopped from maintaining this action from the fact that each of the plaintiffs, and Carl Van Fleet, long since "entered into possession of the lands devised to each respectively by the will," and have paid general taxes, and also inheritance taxes thereon, based on the value of the respective life estates, and that each of the remaining plaintiffs, almost two years before the case was tried, accepted $4,046.03 bequeathed to them respectively under the terms of the will.  But we do not find it necessary to decide the question of estoppel in the determination of the case.

The will cannot be annulled because of the discrimination that appears therein, nor upon any of the grounds urged by plaintiffs.  It must be conceded that one of the main objects of a will is to permit discrimination by the testator and, within the rules of law, to direct the channel of inheritance.  It is elementary that, within these rules, the testator has a right to make an unnatural, unreasonable, or unjust disposition of his property; in short, to dispose of his estate to whomsoever he will, always provided, of course, that he has the requisite capacity to make

a will. 40 Cyc. 1079. If all must share equally in the ancestor's bounty, if a will must be revoked by the courts on the ground that the testator has exercised discrimination, even amongst his nearest of kin, with respect to the bestowal of his lands and goods, the making of wills may well be abolished.

The will and the codicil consist of nine pages. Together they contain a multiplicity of words and needless repetitions. In upholding the will we do not commend it as a model of testamentary expression. Nevertheless we conclude, upon analysis, that it effects a valid disposition of all of the estate of the testator that is described and named therein.

Except as modified herein, the judgment of the district court is affirmed.

AFFIRMED AS MODIFIED.