IN RE ESTATE OF THOMAS F. BARTLETT.
CORA L. BARTLETT, APPELLANT, V. REBECCA ST. ISLE
LAHR ET AL., APPELLEES.

FILED JUNE 12, 1922.   No. 21994.

1. Wills: REVOCATION BY IMPLICATION. "There is no fixed rule by which the revocation of a will may be implied from subsequent changes in the condition or circumstances of the testator. Each case must be governed by its own peculiar facts." *Hill v. Hill*, 106 Neb. 17.

2. ———: ———: DIVORCE. Where a wife obtained a divorce subsequent to the making of a will in her favor by her husband and the decree therein only satisfied the property rights of the parties as they existed when the divorce was granted, such decree will not operate as a revocation of the will by implication of law.

3. ———: ———. The court will not hold that a will has been revoked by "subsequent changes in the conditions or circumstances of the testator" unless the record clearly and unequivocally supports the theory of revocation.

APPEAL from the district court for Lancaster county: WILLARD E. STEWART, JUDGE. *Reversed.*

*W. T. Thompson* and *Leonard Ulman,* for appellant.

*Fawcett & Mockett, contra.*

Heard before LETTON, DEAN and FLANSBURG, JJ., DAY and GOOD, District Judges.

DEAN, J.

Thomas F. Bartlett executed his last will and testament December 10, 1903, at Lincoln, Nebraska. He died July 28, 1919, at Kansas City, Missouri, where he was then and had for many years been a legal resident. So far as material here, the will reads: "I will and bequeath all my wordly effects to my wife, Cora Louise Bartlett." The will was disallowed in the county court and Mrs. Bartlett appealed to the district court. Her suit was there dismissed on the ground that the will "was by implication revoked by the testator in his lifetime." Thereupon she appealed to this court.

A bill of exceptions was not filed. The record before us, therefore, upon which our decision must rest, consists of the pleadings, the findings of fact and of law, and the judgment. The contestants in their brief practically concede that, if their answer does not state a complete defense to Mrs. Bartlett's cause of action, the judgment of the trial court cannot be sustained. They argue:

"From our view of the case, the motion for a new trial without a bill of exceptions only raises one proposition, and that is: 'That the judgment of the court is contrary to law.' The plaintiff's case now comes down to the question as to whether or not the answer of the defendants stated a cause of action."

The following material facts are disclosed in the answer of the contestants. September 18, 1916, Bartlett's wife, hereinafter called the proponent, obtained a divorce in Jackson county, Missouri, wherein, among other things, she was awarded $5,000 alimony, which was subsequently

settled for $4,500. She was also awarded $15 additional suit money, $100 additional attorney's fees, the household furniture, and additional alimony of $100 a month until the court otherwise ordered.

The contestants further pleaded that in the prayer of proponent's petition for a divorce she asked:

"That the bonds of matrimony heretofore and now existing between the plaintiff and the defendant be forever dissolved; that the defendant be required to pay her a reasonable amount as temporary alimony, suit money, and for support; and that she shall be awarded such sum as alimony from year to year, or in gross, upon the final determination of this suit, as to the court may seem right and just in the premises."

It was also pleaded by contestants that Bartlett's payment of temporary alimony, attorney's fees, suit money and monthly payments during the pendency of the suit, and his payment to her of $4,500, January 29, 1918, in addition to the furniture which was awarded to her, effected a complete satisfaction of the decree of divorce. Contestants also pleaded that the divorce obtained by proponent was, "on account of the conduct of the defendant towards the plaintiff and his indifference towards her."

Upon joinder of issues, as we have seen, proponent obtained a decree of divorce wherein it was decreed by the court as pleaded in defendant's brief: "That the bonds of matrimony heretofore contracted between plaintiff and defendant be and the same are hereby dissolved and for naught held and plaintiff forever freed from the obligations thereof. It is further ordered by the court that plaintiff be and she is hereby allowed as additional suit money the sum of fifteen ($15) dollars; that plaintiff be allowed as additional attorney fee the further sum of one hundred ($100) dollars; that plaintiff be allowed as alimony, furniture now in possession of plaintiff, the further sum of five thousand ($5,000) dollars as alimony and the further sum of $100 per month, payable on the 15th day of each month, the first payment to be made on October 15, 1916,

and a like sum of one hundred ($100) dollars on the 15th day of each month thereafter, until the further order of this court."

It is pleaded too by defendants that, January 29, 1918, proponent executed and delivered to Bartlett a satisfaction of the divorce decree, which was filed by him in the office of the circuit court for Jackson county, Missouri. The release so executed by the proponent, as shown by their answer, *inter alia,* recites:

"It being the intention of this satisfaction to compromise and forever discharge and clear of records any and all judgments against the defendant for amounts already accrued and all amounts to accrue in the future."

Defendants further pleaded:

"The four thousand five hundred ($4,500) dollars so paid was in addition to the furniture set aside to Cora Louise Bartlett by the court in the decree in her favor for a divorce, and in addition to temporary alimony, attorney's fees, and monthly payments paid by Thomas F. Bartlett under the order of the court, during the pendency of said suit, and after the decree was rendered, and said final payment was a full and final settlement of all property rights between the parties forever discharging Thomas F. Bartlett, of Kansas City, Missouri, his heirs, executors, administrators and assigns of and from a certain judgment entered in the circuit court for Jackson county, Missouri, * * * together with all alimony, attorney's fees, costs, interest, and amounts coming due under said judgment."

The answer shows that the same release also discharged Bartlett from liability for the payment of a certain judgment in Lancaster county in which, with other persons, she claimed an interest. It also appears that for the same consideration the proponent filed a disclaimer of any and all interest in a certain case then pending and undetermined in Lancaster county wherein she was adversely interested as against Bartlett and others. Contestants' answer also shows this recital in the release:

"The object being by this release to compromise, dis-

charge and free Thomas F. Bartlett of any and all judgments, interest, costs and attorney's fees so that the records will be free and clear against said Thomas F. Bartlett."

. It is pleaded, among other things, that Bartlett, October 24, 1917, substituted the name of a sister as beneficiary, in the place of proponent, in a certain accident insurance policy, and that this act and his changed condition generally after his divorce indicated that he "believed that all relations between him and his wife were severed, and that by said divorce he was fully free from any provisions made by him for his said wife by any will or otherwise."

Contestants also pleaded that the relations between Bartlett and proponent from the time that the petition for divorce was filed until the "payment of $4,500 was one of continuing hostility and litigation," and that her conduct "clearly indicated that she (proponent) believed at all times that it was the intention of her former husband to destroy all provisions made for her in any will," and that the divorce, and the several payments made in pursuance thereof, annulled the marital relations theretofore existing, so that when Bartlett died she was not his wife and consequently at the time of the trial was not his widow. It was finally pleaded that the provisions in the will in proponent's favor conferred upon her no right, title or benefit in his estate, either real or personal, and that as to all of his estate Bartlett died intestate.

Proponent's reply denied generally the allegations pleaded in the answer, except as to certain formal admissions respecting the marriage, the divorce, the place and date of Bartlett's death, and the like. It was pleaded that she, "by her labors, frugality and thrift helped him to acquire and accumulate the estate of which he died seised and possessed, and that, * * * shortly prior to the death of said testator proponent secured a divorce from her said husband on account of the violation of the marriage contract and obligations by him, her said husband." She further alleged that, in view of Bartlett's legal residence in

Missouri immediately before he died, by the laws of that state the will in question was not revoked, nor was it revoked by the laws of Nebraska, and that it was never the intention of the testator to revoke his will.

That the will was legally executed is not questioned by the contestants, but they argue that it "has been revoked by implication of law" as found by the district court. They insist that Bartlett's settlement with his wife terminated their marital relations, and that the will which was executed many years before the settlement should not become operative at his death. The argument is that Bartlett either forgot that there was a will or he believed that the divorce proceedings and the settlement revoked the will, and that he would not knowingly have allowed the will to remain in existence under the strained relations that existed between himself and his former wife.

In view of the record and of the law and of the weight of authority as announced in the decisions, the argument of contestants is not tenable. Section 1295, Rev. St. 1913, provides how a will may lawfully be revoked. The section reads:

"No will, nor any part thereof, shall be revoked, unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this article; or by some writing signed, attested and subscribed in the manner provided in this article for the execution of a will; excepting only, that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator."

The statute was first construed by this court in *Baacke v. Baacke*, 50 Neb. 18. The second paragraph of the syllabus reads:

"An absolute revocation of a will cannot be implied by law from the obtaining of a divorce from the testator by his wife after the making of the will, the death of one of his

children for whom provision was made in the will, and the birth of three children to such deceased child, prior to the testator's death."

In the body of the opinion at page 22, it is said:

"While our statute recognizes revocations of wills by implication of law, it has not undertaken to designate or specify what subsequent changes in the condition and circumstances of the testator will produce such revocation, but it is for the court to determine from the facts of each particular case, under the rules and forms of law, whether the testator intended the will to stand notwithstanding the changes in his condition and circumstances. * * * No case has been cited, nor has the writer been able to find a single authority, which holds that a subsequent granting of a divorce to the wife of a testator, and a settlement of her property rights, work a revocation."

In *Hill v. Hill,* 106 Neb. 17, we held: "There is no fixed rule by which the revocation of a will may be implied from subsequent changes in the condition or circumstances of the testator. Each case must be governed by its own peculiar facts." In the *Hill* case these facts appear:

"Fifteen years elapsed between the date of the execution of a will and the death of the testator. The will provided that his wife, whose death preceded his by about two years, should have as her share of the estate 'the provisions made by law for her.' In the interim a section of farm land was purchased that was not devised by the will. A life estate in a house and lot was devised to an only daughter, of the value of $5,000 or $6,000, which the testator subsequently sold. * * * When the will was executed the testator had practically no personal property, but he then owned 1,000 acres of farm land worth about $50,000; when he died he had about $25,000 in money and owned property worth more than a quarter of a million dollars. *Held,* that the 'changes in the conditions or circumstances of the testator' did not, under section 1295, Rev. St. 1913, work a revocation of the will by implication of law."

Substantially the same question was before the supreme

court of Iowa in 1908. *In re Estate of Brown*, 139 Ia. 219. In that case Brown executed a will whereby he devised all his estate to his wife, save the sum of $1,000. to each of his two children. In 1905 his wife was divorced from him. In the divorce action the property rights of the parties were settled by the decree, which concludes with this language:

"That the foregoing provisions for and in behalf of the plaintiff when paid and complied with by the defendant shall be in full payment, satisfaction, and discharge of all her interest in and to the property of the defendant."

It is pointed out in that case that there was nothing to indicate that Brown intended to change the provisions in his will in favor of his wife, nor was there anything to show that his wife believed that such was his intention, and that she did nothing to prevent her former husband from destroying or revoking the will. The court there observed that the provision made for the wife in the divorce decree was not a voluntary agreement or advancement, but was awarded because of defendant's legal obligation to support her, and that so far as the record disclosed the divorce decree was not intended to take the place of the provision made in the will. The court proceeded to say:

"The divorce decree simply satisfied the property rights between the parties as they existed at that time, and had no reference whatever to any disposition which the testator might then or thereafter have made of his property by will. * * * Manifestly the revocation implied as of law must result from facts and circumstances which were everywhere regarded as sufficient under the common law."

*Jones' Estate*, 211 Pa. St. 364, is in point. At page 381 the court said: "The decree in divorce took away only what the law gave to her when the marriage was contracted. This was the right to support, and to dower in his estate if she survived him. After the entry of the decree, the testator was no longer bound to provide for her, and she had no further claim upon his estate. What the law gave, it took away; nothing more. The beneficiary is not here claiming anything which accrued to her in pursuance of her mar-

riage. She is here only as a legatee, and is asking for that only which the testator gave to her of his free grace, and as a matter of bounty. That which he gave to her in his will was his own, to give or to withhold as he saw fit, A bequest needs no consideration to support it. As a legatee she stands upon the same footing as any other individual, and her relation to the testator has nothing to do with the case, unless he chose to make it an element, in the bestowal of the gift."

In 1 Schouler, Wills (5th ed.) sec. 427, it is said:

"Modern legislation itself repudiates in England and some of our states the whole theory of a presumed intention to revoke on the ground of an alteration in circumstances; and what is left of that theory, aside from such statutes, it would be very difficult to say."

*Card v. Alexander*, 48 Conn. 492, is a case where, a year and a half after the execution of his will, the testator obtained a divorce from his wife for her misconduct. Four years thereafter he died leaving the will unrevoked. In that case it is said: "But it is contended that the divorce by operation of law revoked this bequest. No case is cited in support of this position, and we are not aware that any exists. It may be true that the divorce divested the wife of all those executory property rights which had no basis but the coverture; but that hardly reaches this case, for here the right rests mainly, not upon coverture, but upon the will; and it cannot be said that coverture was the sole motive or inducement to the will." To the same effect is *Charlton v. Miller*, 27 Ohio St. 298.

From the record in the present case the divorce decree merely appears to have satisfied the property rights of the parties as they existed when the divorce was granted. From the fact that Bartlett did not revoke his will in the statutory manner naturally leads to the presumption that he did not intend to revoke it. Clearly the court should not hold that the will has been revoked by implication of law except in a clear case. The court has no more right to set a will aside, unless it is clearly warranted by the facts, than

it has to make a will for a testator. Bartlett's reasons for leaving the will unrevoked were his own. What his relations were with his wife may in part be gathered from some of the grounds alleged in her petition for a divorce. The contestants' answer shows that the proponent obtained her divorce on account of her husband's conduct and his indifference toward her. From this it may reasonably be inferred that it was Bartlett's intention to make amends for some of the wrongs he had committed against his wife, whatever they may have been, and for that reason he did not revoke the will.

Contestants stress the fact that Bartlett substituted the name of a sister for that of his wife in an accident beneficiary policy. That circumstance, if it proves anything, goes to show that decedent was willing to take from his wife a thing which was of no value, except upon the problematical or the remote contingency of personal injury to the insured, and bestow it upon another, but he was not willing to, nor did he, deprive her of that which was of real value, namely, the provisions made for her in the will. It is obvious that to have revoked the will in any of the methods pointed out by the statute would have been a more simple process than the technical procedure which is required to effect the substitution of one beneficiary for another in any sort of an insurance policy. The fact remains that Bartlett, apparently for reasons of his own, gave the substance of his estate to his wife, and there it remained at his death. To another he gave a remote expectancy which in comparison was a mere shadow.

After Bartlett's death the rights of proponent could not of course be based on a marriage tie which was dissolved, but were based on a valid will which does not appear to have been revoked in the statutory manner nor by implication of law. The decisions are not altogether harmonious, but the great weight of authority supports our conclusion. There is nothing in the pleadings, nor in the record, which should be held to amount to implied revocation of the will.

In re Estate of Bartlett.

The conclusion is that the will in question is operative and the district court is so advised. The judgment is reversed and the cause remanded for further proceedings in conformity with the views expressed in this opinion.

REVERSED.

FLANSBURG, J., dissents.

The following opinion on motion for rehearing was filed November 25, 1922. *Former judgment vacated, and judgment of district court affirmed.*

1. **Wills:** REVOCATION BY IMPLICATION: DIVORCE. A divorce between husband and wife, with a judgment for permanent alimony, followed by an agreement of settlement, which agreement was sufficient to settle all the property rights of the parties, is such a change of circumstances affecting the husband as to work, by implication, a revocation of his previously executed will.

2. ———: ———: STATUTORY PROVISION. The statute (Comp. St. 1922, sec. 1250), specifying the methods by which a will may be revoked, and providing that nothing contained in the section "shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator," was not intended to preserve implied revocations in those cases only where the particular facts were found to be such as warranted a revocation at common law, for what were considered to be controlling conditions then had become changed at the time of the enactment of the statute, but rather the statute was intended to preserve and perpetuate the principle upon which those revocations were based.

3. ———: ———: ———. By that statute it was intended that the matter should be left to the courts to decide what subsequent changes in the conditions or circumstances of the testator should be sufficient, under our law, to fall within the reason and principle of implied revocations.

Heard before LETTON, ROSE, ALDRICH, DAY and FLANSBURG, JJ., REDICK, District Judge.

FLANSBURG, J.

On motion for rehearing. Former opinion, *ante*, p. 681.

This was an action by plaintiff, Mrs. Bartlett, claiming the property of her former husband by virtue of a will which named her sole beneficiary. The defense was that, by reason of the divorce of Mrs. Bartlett and her husband

and a settlement of property rights between them, the will had become revoked by implication of law.

The facts are fully set out in the former opinion. In brief it is shown that the testator, Mr. Bartlett, executed the will in question at a time when he entered the masonic lodge, in December, 1903. In 1916 plaintiff obtained a divorce from him and was awarded judgment for $5,000 alimony, suit money and attorney's fees. She also was given the household furniture, and, in addition, he was required to pay her $100 a month until the court should otherwise order. He refused to comply with the order, and plaintiff resorted to an attachment and other court proceedings for the purpose of compelling payment. Pending that litigation, an agreement of settlement was entered into, whereby he paid to her a certain amount of money and delivered to her the household furniture; it being agreed that this was to be in full settlement of the judgment, for amounts already accrued and all amounts to accrue in the future. By this agreement these parties made a complete settlement as to their then existing property rights.

The question presented is whether a divorce between husband and wife, coupled with a complete settlement of property rights, constitutes such a change of circumstances as to revoke, by implication, a will in favor of the wife, executed by the husband prior to the divorce.

There are decisions to the effect that the divorce alone of the testator from his wife after the making of his will is not sufficient by implication to revoke the will. *Card v. Alexander*, 48 Conn. 492; *Charlton v. Miller*, 27 Ohio St. 298; *Jones' Estate*, 211 Pa. St. 364; 40 Cyc. 1205.

However, we believe it to be a well-established rule and one which is nearer in accord with reason and justice, that a divorce, coupled with a settlement of the property rights of the parties, is such a change of circumstances as to work an implied revocation. *Lansing v. Haynes*, 95 Mich. 16; *Donaldson v. Hall*, 106 Minn. 502; *Wirth v. Wirth*, 149 Mich. 687; *Will of Battis*, 143 Wis. 234.

It is argued that our statute does not permit of an implied revocation in such a case.

The statute (Comp. St. 1922, sec. 1250) reads: "No will, nor any part thereof, shall be revoked, unless by burning, tearing, canceling, or obliterating the same, with the intention of revoking it, by the testator, or by some person in his presence and by his direction; or by some other will or codicil in writing, executed as prescribed in this article; or by some other writing signed, attested and subscribed in the manner provided in this article, for the execution of a will; *excepting only, that nothing* contained in this section *shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator.*"

The contention is made that the "revocation implied by law" in the statute covers only such cases where the particular facts would have been sufficient at common law to have worked a revocation. The marriage alone of a woman revoked her will, and, in the case of a man, marriage and birth of issue.

The reason for an implied revocation at common law is found in the peculiar conditions of the law governing the family relation at that time, which at this time and at the time of the enactment of the statute in question had been changed. At common law the will of the woman was revoked by marriage because coverture destroyed her testamentary capacity. The law in Nebraska at the time of the enactment of the statute in question had been modified in this respect, and a married woman had been given a limited testamentary capacity. Now she has the same rights with respect to her property as a man. The same reason for an implied revocation upon the marriage of the woman, therefore, does not now exist. *Baacke v. Baacke,* 50 Neb. 18. As to an implied revocation of the man's will by marriage and the birth of issue, the situation had, at the time of this enactment, also to a degree been changed. Provision had been made by statute for an inheritance to any child born after the testator had made his will, unless expressly dis-

inherited by the will. Comp. St. 1922, sec. 1266. In the *Baacke* case, in an interpretation of the statute, it was said that the statute left it for the court to say what changes in the condition and circumstances of the testator should be sufficient to work an implied revocation.

The statute, instead of attempting to preserve and provide for those specific revocations allowed at common law, we believe, sought to preserve and perpetuate the underlying principle only upon which those revocations were based. To our mind, the legislature, in using the phrase authorizing such revocations as are to be implied by law, enunciated a rule of justice and a principle that the court should recognize and apply, whenever the change in the conditions or relations of the testator should be sufficient to create different duties on his part, or sufficient to make other persons than those who existed at the time of the making of the will the natural and proper objects of his bounty, and to raise a clear presumption that the testator would have desired to make a revocation, had his attention been directed to it. In the cases cited above, statutes, identical in wording with the statute here under consideration, were so interpreted. Where a husband and wife are divorced and their property rights settled, the wife is excluded from any further share in the husband's estate. Her relation to him as an heir is destroyed. In her place, the law points out who the proper heirs and distributees of his estate shall be. To these persons he also owes a natural obligation. It is beyond reason to suppose that a husband, after a divorce and settlement of property rights, should still desire that a will, which he had previously made in favor of his wife, should continue, and that his estate should pass to her under the will, to the exclusion of his natural heirs. As said in *Lansing v. Haynes, supra*: "The natural presumption (that there is an intended revocation) arising from these changed relations is the reasonable one, and the one which in law implies a revocation." "To hold the will unrevoked under these circumstances

would be repugnant to that common sense and reason up-
on which the law is based."

A full property settlement between husband and wife,
either expressed in their agreement or embodied in the di-
vorce decree, is usually arrived at after a consideration of
the value and extent of the estate of the husband. The wife
upon the separation is given an award, its amount influ-
enced to a large degree by the inchoate interest that she
then has in her husband's property. Such a settlement,
so far as it affects the husband's will, bears to some degree
the characteristics of an ademption, and it is the under-
lying principle of justice which supports the rule as to
ademption which no doubt gives strength and reason to
the implied revocation in case of a divorce and property
settlement betwen husband and wife.

Plaintiff relies upon the decisions in the cases of *Jones'
Estate*, 211 Pa. St. 364, and *In re Estate of Brown*, 139
Ia. 219. In the *Jones* case the court, in rendering the
opinion, points out that the statute in that state expressly
provides the specific manner in which revocation may be
had, and does not contain a general provision for revoca-
tions by implication. The court also distinguished the
case of *Lansing v. Haynes, supra,* pointing out that in the
*Lansing* case there had been a property settlement. We
might further mention, though it hardly bears upon the
question here, that in Pennsylvania, in the case of *Morris'
Estate*, 22 Pa. Dist. Rep. 466, a property settlement, made
between husband and wife at the time of divorce, was even
under the Pennsylvania statute held to be sufficient to re-
voke the will.

The decision in *In re Estate of Brown*, from Iowa, is
also based upon a statute which, like that in Pennsylvania,
is not similar to our own.

The decision in *Baacke v. Baacke*, 50 Neb. 18, is urged
as controlling the question here. In that case the conten-
tion was made that the will had been revoked by a series
of circumstances, including the divorce of the wife, the
death of one child for whom provision had been made in the

will, and the birth of three other children. The divorced wife was not a party to the suit and made no claim to a revocation *pro tanto* in her favor, nor to a distributive share of the testator's estate. Though the court held generally in that case that there was no implied revocation, in speaking particularly of the divorce and property settlement, the court said (p. 23) : "It could no more than revoke the will as to her (the former wife's) legacy, and whether it would have that effect in this case it is not necessary now to determine, as the question is not before us." That decision expressly left the question, here under consideration, open for future solution.

We therefore believe that our former opinion should be modified as herein indicated. The former judgment of this court is set aside, and the judgment of the lower court is

AFFIRMED.

ALDRICH, J., dissents.

DEAN, J., dissenting separately.

After providing for the manner in which a will may be revoked, section 1250, Comp. St. 1922, concludes with a proviso, or exception clause, which reads: "Excepting only, that nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator."

I respectfully submit, that, under the great weight of authority, the clause in question should not be applied to the facts in the present case and the will held for naught. In the main opinion it is said that the legislature, in the enactment of the clause in question, "enunciated a rule of justice and a principle that the court should recognize and apply, whenever the change in the conditions or relations of the testator should be sufficient to create different duties on his part, or sufficient to make other persons than those who existed at the time of the making of the will the natural and proper objects of his bounty."

It is the application of the rule to the facts of which I complain. No reference is made in the record to "other persons than those who existed" when Bartlett's will was

made who should, to the exclusion of Bartlett's wife, become the "natural and proper objects of his bounty." The Bartletts were childless.  The claimants are his sisters. Both are adults and both are married.

Nor is there anything in the record that even tends "to raise a clear presumption that the testator would have desired to make a revocation, had his attention been directed to it."  Every pleaded fact and every presumption points the other way.  The contestants themselves, in their answer, pleaded that the divorce was obtained by Mrs. Bartlett on account of her husband's wrong-doing, and in her reply Mrs. Bartlett pleaded that she "secured a divorce from her said husband on account of the violation of the marriage contract and obligations by him."  It is also significant that she pleaded that she, "by her labors, frugality and thrift helped him (her husband) to acquire and accumulate the estate of which he died seised and possessed."

In view of the record, can it be fairly said, as argued by the majority, that "It is beyond reason to suppose that a husband, after a divorce and settlement of property rights, should still desire that a will, which he had previously made in favor of his wife, should continue, and that his estate should pass to her under the will, to the exclusion of his natural heirs?"  The answer is that it is clearly within the pale of finite reason to believe that a man who was not lost to every sense of honor, and whose wife had obtained a divorce from him because of the violation of the marriage vows, would naturally make such poor amends as money and property might make for his misconduct.  Should there remain a lingering doubt anywhere that Bartlett died in the fond belief that by his will he had made some amends for the wrongs he had committed against the woman whom he had made his wife? If such doubt does remain, it may well be said that another terror has been added to Death's storehouse.

The merits of the clause in question are not of course for discussion here.  Nevertheless it is proper to observe

that the revocation of a will by implication is not a favorite of the law and should not be permitted except in the clearest case.

A testator is endowed with the inalienable right to rest in the belief that his will, if unrevoked by him, shall stand just as he made it, if it conforms to the rules of law. He should not be harassed by the spectral thought that some other person or persons will presume either to change the terms of a will so made or to set it aside.

In the firm belief that a grievous wrong has been committed against Mrs. Bartlett by a misconstruction of the intent of the legislature and that a highly technical and harsh interpretation of a rule of law has been improperly applied to the pleaded facts, I respectfully dissent from the conclusion of the majority and therefore adhere to the rule announced and adopted by the court in the former opinion, *ante,* p. 681.