IN RE ESTATE OF SARAH C. BLACK KULP.
NEBRASKA MASONIC HOME, APPELLEE, V. FRANK E. KULP ET AL., APPELLANTS.

FILED DECEMBER 18, 1931. No. 27979.

*Pitzer, Tyler & Peterson,* for appellants.

*D. W. Livingston, F. H. Woodland, William C. Ramsey* and *Lewis H. Smith, contra.*

Heard before GOSS, C. J., DEAN, EBERLY and PAINE, JJ., and REDICK, District Judge.

REDICK, District Judge.

Appeal from the district court admitting to probate the will of Sarah C. Black Kulp, deceased. The only question presented is whether or not the will was revoked by implication by reason of a change in circumstances of the testatrix.

The will consists of the original testament and three codicils. At the time of its execution testatrix was the owner of 240 acres of land which, with improvements upon one of the 80's, was of the value of about $15,000, and personal property in the amount of $1,500 consisting of a farm mortgage.

By paragraphs 2 and 3 of the will bequests are made to the executors, $200 and $300 respectively, to provide care for the graves of testatrix' father and mother and the family burial lot; by paragraph 5 a bequest of $5 each to a nephew and niece. By paragraph 6 and codicils certain legacies were given to four nephews in the sum of $500 each. For the payment of all the above bequests, by paragraph 7 she gave and bequeathed to her executors in fee simple 160 acres of land, which included the improvements, with instructions to sell the same and pay the legacies from the proceeds; the remainder of such proceeds to be divided equally between her two sisters and two other nephews; as to the nephews such proceeds were to be held by the executors upon certain trusts in their favor.

By the eighth paragraph of the will it was provided as follows. "All of the personal property of my estate (but not including household furniture and personal effects) remaining after the payment of costs and expenses of administration of my estate and any charges of administration of my estate, and all the following described real estate, to wit: (then follows a description of 60 acres, to which 20 acres was thereafter added by codicil, being the remainder of her real estate not theretofore disposed of) I give, devise and bequeath to my executors hereinafter named, and to the survivor of them, in trust, however, and with these powers and conditions: To sell said real estate * * * and to pay over the proceeds arising from said sale, together with whatever amount remains in their hands from the personal property of my estate," to the trustees of the Nebraska Masonic Home located at Plattsmouth, Nebraska.

By the ninth paragraph the absence of any bequest or

provision for her husband, Frank E. Kulp, is explained because of a mutual understanding between them that neither would claim any rights of ownership or management in the property of the other. Her husband, Frank E. Kulp, and William H. Pitzer were nominated as executors. The will was dated November 20, 1917, and the last codicil September 17, 1926.

In August, 1926, testatrix began negotiations for the sale of all of her real estate, which resulted in a contract of sale for the price of $15,000, $5,000 cash and a purchase money mortgage for $10,000, and in fulfilment of such contract, February 23, 1927, testatrix executed a deed for said land. Two thousand dollars of the principal of the mortgage had been paid. Based upon the sale price, the value of the lands to be sold for the benefit of the Masonic Home was about $3,000, and that of the remaining 160 acres, with improvements valued at $5,000 to $6,000, was about $12,000.

At the death of testatrix her estate consisted almost exclusively of securities to the amount of about $18,000, being $8,000 remaining of the purchase money mortgage, other farm mortgages and a note of her husband for $502.29, aggregating $10,202.29. A portion of said securities represents an investment of the cash payment on the sale of the land. The legatees, except the Masonic Home, and the executors appeal from the decree admitting the will to probate.

The question for determination is whether or not the sale by testatrix of all of her real estate which had been devised to her executors to be sold and the various legacies paid out of the proceeds operated as a revocation of the will.

By section 30-210, Comp. St. 1929, specific modes by which a will may be revoked are provided, but with the exception that "nothing contained in this section shall prevent the revocation implied by law from subsequent changes in the conditions or circumstances of the testator." What changes in conditions or circumstances will operate

as a revocation are not defined, but the question is to be determined in each case by its own peculiar facts. *Baacke v. Baacke,* 50 Neb. 18. And the doctrine of revocation is not confined to those causes which would accomplish revocation at common law. *In re Estate of Bartlett,* 108 Neb. 691.

In the determination of this question, as of questions of construction and interpretation of wills, the object is to discover and give effect to the intention of the testator. The doctrine of implied revocation is based upon a presumption that by his acts such result was intended by the testator. The claim of revocation by contestants is based upon the following propositions: (1) That the testator's primary intent was to apportion among those kindred nearest to her the greater part of the estate; (2) that it was not her intention, by reducing her real estate to personal property, to bequeath all of her personal property to the Masonic Home, which would result if the will in its entirety is admitted to probate; (3) that probate of the will would defeat the intention of the testatrix to distribute the major portion of her property among her kindred; (4) that it is not possible to determine what amount of personal property should pass to the proponent, the Masonic Home, under paragraph 8, without making a new will.

At this point we deem it proper to call attention to some general principles by which the question of revocation is to be determined. As a general proposition where, by the terms of the will, a legacy is to be paid out of the proceeds of the sale of certain property and such property is not in existence at the death of the testatrix, the same having been theretofore disposed of by her, the legacy fails. *May v. Sherrard's Legatees,* 115 Va. 617. In legal terms the legacy is adeemed and the legatee is not permitted to look to the proceeds of the sale or the general assets of the estate for its payment, unless a direction so to do is found in the will. *In re Will of Miller,* 128 Ia. 612; 40 Cyc. 1205. By the direction of the will that the real

estate be sold and the proceeds divided among the legatees, the real estate was converted into personalty. *Maxwell v. Maxwell,* 106 Neb. 689; *Stalder v. Stalder,* 105 Neb. 367. The general scheme of the testator as evidenced by all the provisions of the will is to be considered; and if the will can be executed in accordance with such general scheme, notwithstanding the change of circumstances, it will be carried out as nearly as possible in accordance with the testator's intention. *Stender v. Stender,* 181 Mich. 648. If by application of the rules of law the general scheme of the testatrix will be defeated, an intention to revoke the will will be implied from such change.

Applying these principles to the will before us, we are confronted with the question whether or not, if the will is probated, it is possible to distribute the estate in accordance with the intention and general scheme of the testatrix, the proponent claiming that it can be done and the contestants taking the contrary view.

There can be no question that the intention of the testatrix was that approximately five-sixths of her estate should be distributed among her collateral relatives, she having no children of her own, and that one-sixth should pass to the Masonic Home. How may this be accomplished? It may be said that the net assets of the estate may be divided into six parts, five-sixths to the relatives and one-sixth to the Home; but this involves the determination of the respective values of the 160 acres with improvements, and the 80 acres, and places the distribution upon quite a different basis from that provided in the will, viz., the proceeds of a sale by testatrix, instead of one by the executors, which is rendered incapable of execution by the act of testatrix. *In re Will of Miller,* 128 Ia. 612; *McNaughton v. McNaughton,* 34 N. Y. 201; 1 Jarman, Wills, p. 162. It is, of course, simple enough to pay the definite legacies of $500 each provided for in the seventh paragraph, but it is impossible to determine what would have been the surplus upon the sale of the 160 acres, or the proceeds of a sale of the 80 acres, had it been made

by the executors under the instructions' contained in the will. To assume that the proceeds of such sales would be $15,000 and make the distribution upon that basis, it seems to us, is entirely inadmissible, for such proceeds might have been considerably less or in excess of that amount. It seems, therefore, impossible to determine the amounts which the Home and the legatees of the surplus after payment of the specific legacies should respectively receive in compliance with the expressed intention of the testatrix. To make distribution as suggested would be, in effect, making a new will.

If under the rules of law the legacies bequeathed by paragraphs 2, 3, 5, and 7 are adeemed and destroyed by the sale of the property out of which they were specifically to be paid, then the proceeds would become a part of the general estate and, unless contrary to the manifest intention of testatrix, pass to the Masonic Home under the eighth paragraph, which would thereby acquire the entire estate to the exclusion of the relatives of the testatrix. A mere perusal of the will convinces us that no such result could possibly have been intended by the testatrix, and we conclude that an irresistible presumption arises that she would have changed her will if such effect of the sale of the lands had been called to her attention. Thus the case presents ample proof of a change in circumstances to justify the application of the rule of implied revocation. We think, however, the revocation should not effect a complete destruction of the will, but that, in so far as its provisions are not affected by the act of the testatrix from which revocation is implied, they should be executed, thereby giving effect to the intention of testatrix as nearly as possible. Election by the husband to take under the statute does not operate to revoke the will, but merely operates to cut down the amounts to be distributed as legacies. *In re Estate of Grobe,* 101 Neb. 786.

Paragraph 8 of the will bequeaths to the Masonic Home (1) "All the personal property of my estate" and (2) the proceeds of the sale of 80 acres. This last provision (2),

as we have seen, is rendered inoperative by a sale of the land; but the first (1) remains unaffected and should be executed according to the intention of the testatrix. We think "personal property" was used in a restricted sense, upon the assumption that the real estate would be sold as provided; and, therefore, the proceeds of sale of the lands, so far as they can be traced, do not fall within this description. See *Stender v. Stender*, 181 Mich. 648.

It is therefore ordered that the judgment of the district court be modified, the will admitted to probate and executed to the extent of the legacy of personal property to the Masonic Home and appointment of executors, and the remainder of will disallowed as revoked; that the remaining assets of the estate be distributed according to the law of intestate estates; that a decree be entered accordingly and certified to the county court of Otoe county.

AFFIRMED AS MODIFIED.