IN RE ESTATE OF DONALD A. POACH, DECEASED.
DANIEL L. POACH AND DERICIA L. HAUGH,
OBJECTORS-APPELLANTS, V. MARY ELLEN POACH,
PERSONAL REPRESENTATIVE OF THE ESTATE
OF DONALD A. POACH, DECEASED, APPELLEE.

600 N.W. 2d 172

Filed September 10, 1999.   No. S-98-494.

Robert C. McGowan, Jr., of McGowan & McGowan, for appellants.

John C. Brownrigg, of Erickson & Sederstrom, P.C., for appellee.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

GERRARD, J.

## INTRODUCTION

This is a probate case wherein two adult children of Donald A. Poach (the testator) appeal from the county court's award of summary judgment in favor of Mary Ellen Poach, widow of the testator and personal representative of the testator's estate. The two children, Daniel L. Poach and Dericia L. Haugh (collectively the appellants), claim that there are genuine issues of material fact in dispute concerning their interest in 380 shares of common stock devised to their brother, Dart L. Poach, and that Mary Ellen was not entitled to judgment as a matter of law. For the reasons that follow, we reverse, and remand for further proceedings.

## FACTUAL BACKGROUND

The following facts are not in dispute: The testator had three children from a previous marriage—Dart, Daniel, and Dericia—when he married Mary Ellen in May 1986. The testator's last

will, executed in Douglas County on November 13, 1989, appointed Mary Ellen as personal representative and devised the residuary of the estate to her.

Article III of the will devised all stock that the testator owned at death in Don's Leather Cleaning, Inc. (DLC), a closely held Minnesota corporation, to his son Dart. However, as a condition and provision for taking under article III, the will set forth that Dart must execute two promissory notes—one to Daniel and one to Dericia—for $90,000 each, with specific payment schedules to conclude within 30 months of the testator's death. In the event that Mary Ellen survived the testator, the will devised nothing else to any of the testator's children.

At the time of the will's execution in November 1989, the testator owned 640 shares in DLC, Dart owned 200 shares, and the appellants owned 80 shares each. The appellants' shares, however, were canceled a week after the execution of the will, leaving Dart and the testator as the only shareholders in DLC. Through various transactions, Dart came to be the majority shareholder in DLC, holding 460 shares, with the testator holding 380 shares at his death on January 2, 1997.

Approximately 53 months after executing the will, the testator entered into a "Stock Redemption Agreement" (Redemption Agreement) with DLC and Dart on April 1, 1994. The Redemption Agreement operated as an option contract, granting DLC and Dart the right of first refusal to purchase the balance of the testator's DLC stock should the testator attempt to transfer those shares in life or by operation of law upon death.

The Redemption Agreement required DLC to deliver a written election to the personal representative of the testator's estate within 60 days of the personal representative's appointment in order to exercise the purchase option successfully. Likewise, to the extent that DLC did not opt to purchase all of the testator's shares at that point, the Redemption Agreement required Dart to deliver a written election to the personal representative within 120 days of appointment in order to exercise his purchase option as to the balance of the outstanding shares.

For the purpose of establishing the purchase price at which DLC or Dart would obtain the testator's shares by exercise of the option, the Redemption Agreement recited that the value of each

share of stock was $375. The Redemption Agreement also called on DLC's shareholders to reevaluate the stock's value for this purpose within 90 days of the end of each fiscal year. The record contains no evidence that any such reappraisal ever occurred.

Mary Ellen accepted the appointment as personal representative of the testator's estate on January 30, 1997. By way of a letter to the personal representative, dated February 26, 1997, DLC purported to exercise its purchase option as to all of the testator's shares under the Redemption Agreement. DLC also tendered a check for $10,000 and a promissory note for $132,500.

Through her attorney, Mary Ellen, acting as the personal representative, returned the check and promissory note to DLC on March 3, 1997, and refused to confirm her acceptance of the terms and the conditions as outlined in DLC's letter. In so doing, Mary Ellen (1) indicated reservations in light of her elective-share rights as a widow under Neb. Rev. Stat. § 30-2313 (Reissue 1995), (2) articulated her authority and intention to vote the testator's DLC shares until their ultimate distribution, (3) expressed concerns about the validity of the Redemption Agreement, (4) questioned whether DLC's tender had complied adequately with the terms of the Redemption Agreement, and (5) insisted that Dart promise to indemnify the testator's estate for any tax liability incurred from complying with the Redemption Agreement.

After further negotiations, Mary Ellen and DLC reached an agreement on October 28, 1997, wherein DLC purchased the testator's stock from the estate at $539.47 per share (for a total of $205,000) with a $75,000 downpayment.

The appellants did not become aware of the Redemption Agreement between DLC, Dart, and the testator or of the ultimate agreement between Mary Ellen and DLC until November 10, 1997. On that date, the appellants also learned for the first time that Mary Ellen, in her capacity as the personal representative, was taking the position that the proceeds from the sale of the testator's stock fell within the residuary estate and belonged to Mary Ellen.

As personal representative, Mary Ellen filed a formal petition for complete settlement of the testator's estate in the county court on November 26, 1997. In response, the appellants filed an

objection, claiming that they were specific devisees of the testator's estate and that they had a charged interest in the DLC stock.

Mary Ellen moved for summary judgment, which the county court granted on April 14, 1998. The county court specifically found that the testator's execution of the Redemption Agreement, combined with DLC's exercise of the purchase option, adeemed the devise to Dart in article III of the will. The effect of the county court's determination was that the appellants' charge on the devise to Dart had been extinguished as well.

## ASSIGNMENTS OF ERROR

The appellants claim that the county court erred in granting summary judgment to Mary Ellen. The appellants argue, restated, that there were genuine issues of material fact in dispute regarding (1) whether DLC had complied adequately with the notice requirements of the Redemption Agreement, (2) whether DLC and Mary Ellen had abandoned the Redemption Agreement, and (3) whether Mary Ellen, as the personal representative, had authority to negotiate a higher price for the stock in the manner she did. Moreover, the appellants assert that Mary Ellen was not entitled to judgment as a matter of law in any event because the Redemption Agreement did not operate as an ademption to article III in the will.

## STANDARD OF REVIEW

In reviewing an order granting a motion for summary judgment, an appellate court views the evidence in a light most favorable to the party opposing the motion and gives that party the benefit of all reasonable inferences deducible from the evidence. *Fackler v. Genetzky, ante* p. 130, 595 N.W.2d 884 (1999).

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Id.*

To the extent that this appeal calls for statutory interpretation or presents questions of law, this court must reach an

independent, correct conclusion irrespective of the determination made by the court below. See, *Miller v. M.F.S. York/Stormor, ante* p. 100, 595 N.W.2d 878 (1999); *Doe v. Zedek,* 255 Neb. 963, 587 N.W.2d 885 (1999).

## ANALYSIS

The dispositive question in this appeal is whether the Redemption Agreement operated to adeem the devise to Dart as a matter of law. We conclude that the Redemption Agreement did not adeem the devise and that the county court erred in granting summary judgment in favor of Mary Ellen.

■ Only a handful of Nebraska cases have analyzed the doctrine of ademption. A review of these cases, particularly *Reed v. McClow,* 205 Neb. 739, 290 N.W.2d 186 (1980), and *Austin v. Austin,* 147 Neb. 109, 22 N.W.2d 560 (1946), reveals that there are two types of ademption; one involves satisfaction of the devise, while the other involves an implied revocation. See, also, Restatement (Third) of Property §§ 5.2 and 5.4 (1998); 96 C.J.S. *Wills* §§ 1172 and 1178 (1957); 80 Am. Jur. 2d *Wills* § 1701 (1975).

■ An ademption by satisfaction occurs when the testator, prior to death, conveys to the beneficiary the property that was specifically devised to that beneficiary. Neb. Rev. Stat. § 30-2350 (Reissue 1995); *Reed v. McClow, supra.*

■ Despite Mary Ellen's assertions, the doctrine of ademption by satisfaction is not applicable to the 380 shares of DLC that the testator held at death. While the testator contractually granted Dart (the beneficiary under the will) and DLC (a nonbeneficiary) an option to purchase the stock, DLC exercised the option; hence, the shares ultimately were conveyed to DLC, not to the beneficiary. Moreover, there is no indication in the record that the testator declared in writing, as required by § 30-2350, that the sale of the DLC stock was in satisfaction of the devise. See *In re Estate of Soule,* 248 Neb. 878, 540 N.W.2d 118 (1995).

■ Confining our analysis, then, to ademption by implied revocation, this type of ademption most commonly describes an "act by which a devise . . . of specific property becomes inoperative by the sale or extinction of the property *during the testa-*

*tor's lifetime."* (Emphasis supplied.) *Reed v. McClow*, 205 Neb. at 740, 290 N.W.2d at 188.

■ We have explained that the doctrine of ademption by implied revocation is "based upon a presumed alteration of intention arising from the changed condition and circumstances of the testator, or on the presumption that the will would have been different had it been executed under the altered circumstances." *Baacke v. Baacke*, 50 Neb. 18, 23, 69 N.W. 303, 304 (1896).

According to Mary Ellen, the Redemption Agreement demonstrated the testator's implied intent to revoke the devise of DLC stock to Dart and, therefore, the Redemption Agreement adeemed the devise. We do not agree.

■ In deciding whether an ademption has occurred, "the object is to discover and give effect to the intention of the testator." *In re Estate of Kulp*, 122 Neb. 157, 161, 239 N.W. 636, 637-38 (1931). See, also, *Bennett v. Blue Mound Cemetery Assn.*, 162 Neb. 636, 77 N.W.2d 158 (1956); *Austin v. Austin, supra.* See, also, generally, the Restatement, *supra*, § 5.2, comment *b*.

■ While "it is the underlying principle of justice which supports the [doctrine of ademption]," *In re Estate of Bartlett*, 108 Neb. 691, 695, 190 N.W. 869, 870 (1922), courts should not hold that a devise has been adeemed by implied revocation "except in a clear case," *In re Estate of Bartlett*, 108 Neb. 681, 689, 189 N.W. 390, 393 (1922), *modified, In re Estate of Bartlett*, 108 Neb. 691, 190 N.W.2d 869.

We first note that the purchase option became effective only upon the death of the testator, such that there was no sale or extinction of the devised property within the testator's lifetime. See *Reed v. McClow*, 205 Neb. 739, 290 N.W.2d 186 (1980). Moreover, we cannot conclude that the Redemption Agreement clearly indicates an intent on the part of the testator to revoke the devise of the DLC stock to Dart.

To the contrary, the devise and the Redemption Agreement, taken together, indicate that the testator's primary concern was that Dart retain control of DLC. The Redemption Agreement simply provided a different mechanism by which Dart could retain control of the corporation. Under the devise, Dart received the DLC stock subject to the appellants' charge. Under the Redemption Agreement, Dart could purchase the stock per-

sonally, or DLC—of which Dart was the majority shareholder— could purchase the stock. Under all of these circumstances, Dart was to retain control of DLC.

As Dart's retention of control over DLC was the common goal of both the Redemption Agreement and the devise, it cannot be said that the Redemption Agreement clearly evidences some intent on the part of the testator that is inconsistent with the devise. The Redemption Agreement simply granted DLC and Dart options to purchase, which they were in no way obliged to exercise. In short, the Redemption Agreement did not implicitly revoke the devise and, consequently, does not support a finding of ademption.

■ Given that, we are mindful of Neb. Rev. Stat. § 30-2345(a) (Reissue 1995), which provides: "If the testator intended a specific devise of certain securities rather than the equivalent value thereof, the specific devisee is entitled only to: (1) as much of the devised securities as is a part of the estate at the time of the testator's death . . . ."

The testator in this case definitely intended a specific devise of certain securities; specifically, whatever DLC shares the testator held upon death would be granted to Dart. Compare Neb. Rev. Stat. § 30-2209 (Reissue 1995) (defining securities, for purposes of Nebraska Probate Code, to include any stock), with *In re Estate of Lewis*, 148 Neb. 592, 28 N.W.2d 427 (1947) (distinguishing between specific and demonstrative legacies). Moreover, because DLC did not attempt to exercise its purchase option until nearly 8 weeks after the testator's death, the 380 shares of DLC became part of the estate at the time of the testator's death. Thus, Dart was entitled to those shares subject to the appellants' charge under the devise.

The record indicates, however, that Dart did not receive the shares under the devise and that they were instead sold to DLC. Other courts, facing circumstances in which an option regarding devised property has been exercised following the death of the testator, have held that the option may be exercised, but does not result in ademption, and that the devisee is consequently entitled to the proceeds of the option purchase. See, *Eddington vs. Turner, et al.*, 27 Del. Ch. 411, 38 A.2d 738 (1944); *Blass v. Sperling Pork Store, Inc.*, 27 Misc. 2d 50, 205 N.Y.S.2d 604

(1960); *Matter of Becher*, 204 Misc. 523, 123 N.Y.S.2d 589 (1953); *Partridge v. Pidgeon*, 166 Ohio St. 496, 143 N.E.2d 840 (1957).

For example, in *Matter of Becher, supra*, an option contract for the purchase of stock was executed subsequent to the death of the owner of the stock, who had specifically devised it in his will. The court determined that the devisee took the stock under the will, but subject to the infirmity of the option contract. *Id.* In other words, when the contractual option was exercised, the devisee under the will was entitled to the proceeds of the sale. *Id.*

We find this reasoning to be persuasive. In the present case, Dart was the devisee under the will, and since Dart's devised property was sold under the Redemption Agreement, Dart is entitled to the proceeds of the sale. Of course, to accept the benefits of the devise, Dart is also obliged to satisfy the condition attached to that devise; specifically, the payment to the appellants required by the will.

## CONCLUSION

The Redemption Agreement did not adeem the devise to Dart provided in article III of the will, and the county court erred in so finding. Instead, Dart was entitled to the devise subject to the infirmity of the Redemption Agreement. Since a purchase under the Redemption Agreement has already been completed, Dart is entitled to the proceeds of the sale, provided that he executes promissory notes to the appellants as required by the charge on the devise.

Consequently, we reverse the judgment of the county court and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.

Connolly, J., not participating.