IN RE ESTATE OF LILLIAN M. BAUER, DECEASED.
MARVIN E. BAUER, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF LILLIAN M. BAUER,
DECEASED, APPELLANT, V. BETTY M. BEDIENT AND
KATHRYN E. WARD, APPELLEES.
700 N.W.2d 572

Filed July 1, 2005.    No. S-04-429.

Dennis D. King, of Smith, King & Freudenberg, P.C., for appellant.

Howard P. Olsen, Jr., and John F. Simmons, of Simmons Olsen Law Firm, P.C., for appellees.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

The issue presented in this appeal is whether an ademption occurs when specifically devised real property is sold pursuant to a durable power of attorney prior to the death of the testator. We agree with the county court for Box Butte County that on the facts presented in the record, the sale resulted in an ademption, and that the proceeds of the sale remaining at the time of the testator's death were properly included in the residuary estate.

## BACKGROUND

Lillian M. Bauer and Earl O. Bauer, husband and wife, executed wills on December 18, 1991, in which each left all of their property to the surviving spouse. Each will further provided:

> If my [spouse] does not survive me, I give and devise all real estate owned by me in Sheridan County, Nebraska to my son, **Marvin E. Bauer**.

> If my [spouse] does not survive me, I give and devise all my residuary estate, being all property, wherever situated, not otherwise effectively disposed of, to my daughters, **Betty M. Bedient and Kathy E. Ward**, in equal shares, share and share alike.

The real property referred to in the wills consisted of ranchland which Marvin E. Bauer had leased from his parents, Earl and Lillian, beginning in 1980.

On March 17, 1999, Earl and Lillian each executed a durable power of attorney appointing Marvin as attorney in fact and

authorizing him, inter alia, "[t]o acquire or dispose of real estate or personal property (tangible and intangible), for cash or on credit, at public or private sale . . . ." On August 18, Earl and Lillian sold to Marvin and his wife, by installment contract, a portion of the ranch property for a purchase price of $170,171 at 6 percent interest per annum. The contract also called for forgiveness of any unpaid portion of the remaining debt upon the deaths of Earl and Lillian. Earl signed the contract himself, and Marvin signed as attorney in fact for Lillian. Marvin made two payments under the contract totaling $29,672.56. Earl returned one-half of one payment as a gift to Marvin.

On approximately May 4, 2001, Marvin filed a petition in the county court for Box Butte County requesting appointment of a guardian and conservator for Lillian. In this petition, Marvin alleged that other assets of Earl and Lillian had been depleted and that it was necessary to sell the remaining ranchland in order to provide necessary care for both Earl and Lillian. He further alleged that an offer to purchase the ranchland was received, but that due to Lillian's "diminished mental capacity and dementia," it was necessary to have a guardian and conservator appointed for Lillian in order to complete the transaction. Earl and Lillian's daughters, Betty M. Bedient and Kathryn E. Ward, opposed the appointment of a guardian and conservator for Lillian. The parties eventually reached a compromise whereby the guardianship-conservatorship proceedings were dismissed and the entire ranch property, including that portion which Marvin and his wife had been purchasing on contract, was sold to a third party, with Marvin executing the deed as attorney in fact for both Earl and Lillian. This compromise was reflected in a written stipulation and agreement executed by Marvin (individually and as attorney in fact for Earl and Lillian), Bedient, and Ward. Marvin and his wife received a net amount of $109,238.37 from the sale proceeds for their interest in the portion of the ranch which they had been purchasing on contract. At the time of the execution of the agreement and stipulation, both Earl and Lillian resided in a nursing facility and had depleted their liquid assets except for the ranch property.

Earl died on December 9, 2001, and Lillian died on June 26, 2002, survived by Marvin, Bedient, and Ward. Lillian's will was

admitted to probate, and Marvin was appointed personal representative. He initiated this declaratory judgment action in which he alleged that approximately $194,768.82 remained from the sale of the ranch and that he was entitled to such proceeds by reason of the specific devise of the ranch property to him. He further alleged that Bedient and Ward were

> estopped from denying or claiming that such sale and the proceeds from such sale are not subject to the "nonademption" as set forth in NEB. REV. STAT. §30-2346 [(Reissue 1995)] for the reason that they joined in the procedure and process by which such real estate was sold by a power of attorney rather than through a regularly appointed guardian/conservator.

Bedient and Ward filed an answer in which they specifically alleged that Neb. Rev. Stat. § 30-2346 (Reissue 1995) was inapplicable. All parties filed motions for summary judgment. The county court granted summary judgment in favor of Bedient and Ward, determining that the specific devise of real estate was adeemed by the sale of the property and that Bedient and Ward were not estopped from claiming ademption.

Marvin perfected this timely appeal, which we moved to our docket on our own motion pursuant to our statutory authority to regulate the caseloads of the appellate courts. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

## ASSIGNMENTS OF ERROR

Marvin assigns, restated, that the county court erred in entering summary judgment in favor of Bedient and Ward based upon the court's determination that the specific devise of the ranch property was adeemed by its sale during Earl and Lillian's lifetimes and its finding that Bedient and Ward were not estopped from asserting the ademption.

## STANDARD OF REVIEW

In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. *Spring Valley IV Joint Venture v. Nebraska State Bank*, 269 Neb. 82, 690 N.W.2d 778 (2005); *Richards v. Meeske*, 268 Neb. 901,

689 N.W.2d 337 (2004). When adverse parties have each moved for summary judgment and the trial court has sustained one of the motions, the reviewing court obtains jurisdiction over both motions and may determine the controversy which is the subject of those motions or make an order specifying the facts which appear without substantial controversy and direct such further proceedings as the court deems just. *Big River Constr. Co. v. L & H Properties*, 268 Neb. 207, 681 N.W.2d 751 (2004).

To the extent an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent conclusion irrespective of the determination made by the court below. *Hawkins v. City of Omaha*, 261 Neb. 943, 627 N.W.2d 118 (2001); *Brandon v. County of Richardson*, 261 Neb. 636, 624 N.W.2d 604 (2001).

## ANALYSIS

### ADEMPTION

The term "ademption" refers to "[t]he destruction or extinction of a testamentary gift by reason of a bequeathed asset's ceasing to be part of the estate at the time of the testator's death . . . ." Black's Law Dictionary 42 (8th ed. 2004). There are generally two types of ademption, one involving satisfaction of a devise and the other involving an implied revocation thereof. *In re Estate of Poach*, 257 Neb. 663, 600 N.W.2d 172 (1999); *Reed v. McClow*, 205 Neb. 739, 290 N.W.2d 186 (1980). An ademption by satisfaction occurs when a testator, prior to death, conveys to the beneficiary the property that was specifically devised to that beneficiary. *Id.*; Neb. Rev. Stat. § 30-2350 (Reissue 1995). Ademption by implied revocation results from an " 'act by which a devise . . . of specific property becomes inoperative by the sale or extinction of the property *during the testator's lifetime.*' " *In re Estate of Poach*, 257 Neb. at 668-69, 600 N.W.2d at 177, quoting *Reed v. McClow, supra*. In this case, we are presented with the question of whether an ademption by implied revocation occurred when the real property specifically devised to Marvin by his mother was sold to a third party during her lifetime.

The doctrine of ademption by implied revocation is " 'based upon a presumed alteration of intention arising from the changed condition and circumstances of the testator, or on the presumption

that the will would have been different had it been executed under the altered circumstances.'" *In re Estate of Poach*, 257 Neb. at 669, 600 N.W.2d at 177, quoting *Baacke v. Baacke*, 50 Neb. 18, 69 N.W. 303 (1896). To illustrate this principle, this court wrote in *Baacke* that a "sale of the entire estate devised" will have the effect of revocation because "the will cannot thereafter take effect on it." 50 Neb. at 21, 69 N.W. at 304. We held in *In re Estate of Kulp*, 122 Neb. 157, 239 N.W. 636 (1931), that specific legacies which were to be paid from the sale of certain real property after the death of the testatrix were adeemed and rendered inoperative by the sale of such property by the testatrix during her lifetime. Rejecting an argument that the legacies should be satisfied from the proceeds of such sale, we stated that such distribution "would be, in effect, making a new will." *Id.* at 163, 239 N.W. at 638.

The common-law doctrine that ademption results where there has been a sale of the specific property by the testator before the will becomes operative applies except as it has been modified by statute. *Reed v. McClow, supra*; *Baacke v. Baacke, supra*. Certain rules of construction codified by the adoption of the Nebraska Probate Code in 1974 modified the common-law doctrine of ademption by implied revocation under certain circumstances. *Reed v. McClow, supra*. Specifically, § 30-2346 provides in relevant part:

> (a) If specifically devised property is sold by a conservator or guardian . . . the specific devisee has the right to a general pecuniary devise equal to the net sale price . . . . This subsection does not apply if, subsequent to the sale . . . it is adjudicated that the disability of the testator has ceased and the testator survives the adjudication by one year. The right of the specific devisee under this subsection is reduced by any right he has under subsection (b).

> (b) A specific devisee has the right to the remaining specifically devised property and:

> (1) any balance of the purchase price (together with any security interest) owing from a purchaser to the testator at death by reason of sale of the property.

This statute creates an exception to the common-law rule of ademption by implied revocation when property is sold by a conservator or guardian. Although the statute does not create a

similar exception with respect to sales by an attorney in fact under a durable power of attorney, Marvin urges that we should follow the Supreme Court of Kansas and judicially formulate such an exception. In *In re Estate of Graham*, 216 Kan. 770, 777-78, 533 P.2d 1318, 1323-24 (1975), the court held that

> where following execution of his will a testator becomes incompetent and his conservator *or attorney-in-fact* acting under a power of attorney sells the property which is the subject matter of a specific devise and a portion of the proceeds from the sale of the property remains in the hands of the conservator *or attorney-in-fact* at the time of the testator's death, an ademption ordinarily does not take place. The unexpended proceeds of the sale are impressed with a trust in the hands of the executor and on distribution of the estate should be paid to the devisee in accordance with the specific devise contained in the will.

(Emphasis supplied.) The Kansas Supreme Court had previously held that a voluntary sale by a competent testator of ranch property which had been specifically devised to his nephews resulted in an ademption and that the nephews were not therefore entitled to the proceeds of the sale remaining at the death of the testator. *In re Estate of Snyder*, 199 Kan. 487, 430 P.2d 212 (1967). In *In re Estate of Graham*, the court reasoned that while ademption of a specific devise normally occurs when a competent testator voluntarily conveys the devised property during his lifetime, as in *In re Estate of Snyder*, the intent of the testator to effect an ademption cannot be presumed from a sale by a person acting in a representative capacity at a time when the testator "had no capacity or understanding relative to the sale of his real estate." *In re Estate of Graham*, 216 Kan. at 774, 533 P.2d at 1321.

The *In re Estate of Graham* opinion makes no reference to any Kansas statute which modifies the common-law doctrine of ademption by implied revocation. If we were to adopt the reasoning of *In re Estate of Graham*, we would be extending Nebraska's current statutory rule of nonademption with respect to a sale by a conservator, as set forth in § 30-2346(a), to a sale by an attorney in fact under a durable power of attorney. In *In re Estate of Hegel*, 76 Ohio St. 3d 476, 668 N.E.2d 474 (1996), the Supreme Court of Ohio addressed this precise issue. An

Ohio statute modeled after the Uniform Probate Code provided that ademption would not result from a sale of specifically bequeathed property by a guardian and that the specific devisee or legatee had a right to a general pecuniary bequest or devise equal to the net proceeds of such sale. The court noted that the Ohio General Assembly had not adopted subsequent amendments to the Uniform Probate Code which established a similar rule of nonademption with respect to specifically devised property sold " 'by an agent acting within the authority of a *durable power of attorney* for an incapacitated principal.' " *In re Estate of Hegel*, 76 Ohio St. 3d at 477, 668 N.W.2d at 476, quoting Unif. Probate Code § 2-606(b), 8 U.L.A. 171 (Supp. 1996). The court indicated its unwillingness "to read into the statute language that the [Ohio] General Assembly has decided not to specifically include." *In re Estate of Hegel*, 76 Ohio St. 3d at 478, 668 N.E.2d at 476. It further noted a distinction between a guardian appointed by and subject to the control of a probate court and an attorney in fact who is permitted to act without court approval as the alter ego of the principal.

We conclude that the county court was correct in applying the reasoning of *In re Estate of Hegel* to this case. The Nebraska Legislature has not adopted the amendments to the Uniform Probate Code which establish a rule of nonademption in the event of the sale of specifically bequeathed property by an attorney in fact, and we deem it inappropriate for this court to do so by judicial fiat. Although Marvin contends that Lillian was incompetent at the time of the sale, and therefore could not have intended that the sale would operate as an ademption of the specific bequest of the ranch to Marvin, there is no allegation or showing that she lacked the capacity to execute the durable power of attorney in 1999. Neb. Rev. Stat. § 30-2666 (Reissue 1995) provides:

All acts done by an attorney in fact pursuant to a durable power of attorney during any period of disability or incapacity of the principal have the same effect and inure to the benefit of and bind the principal and his or her successors in interest as if the principal were competent and not disabled.

Thus, as a matter of law, the sale of the ranch by the attorney in fact must be treated as the act of a competent principal who, by

such act, impliedly revoked the specific bequest of such property. Under the common law, ademption by implied revocation necessarily resulted from this transfer.

### ESTOPPEL

In rejecting Marvin's claim that Bedient and Ward were estopped from taking the position that the sale of the ranch and the resulting proceeds were not subject to the nonademption rule of § 30-2346, the county court found:

> Betty Bedient and Kathryn Ward were solicitous of their father's feelings and did not wish for him to be declared incapacitated in a guardianship hearing. Evidently, Lillian M. Bauer was considered incapacitated by all the children at the time of the proposed guardianship hearing. There is no evidence that Betty Bedient and Kathryn Ward requested a durable power of attorney in an effort to mislead Marvin Bauer to their benefit.

The elements of equitable estoppel are, as to the party estopped: (1) conduct which amounts to a false representation or concealment of material facts, or at least which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct shall be acted upon by, or influence, the other party or other persons; and (3) knowledge, actual or constructive, of the real facts. *Manker v. Manker*, 263 Neb. 944, 644 N.W.2d 522 (2002). As to the other party, the elements are: (1) lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (3) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel, to his or her injury, detriment, or prejudice. *Id.* The record reflects that Marvin was represented by an attorney during the negotiations which preceded the sale, as were Bedient and Ward. The agreement reached by the parties is set forth in writing and is signed by each party. The document recites that Earl and Lillian had "depleted their assets" except for the ranch property, and further identifies that portion of the net sale proceeds to which Marvin and his wife were entitled in exchange

for their interest in the property. The document makes no reference to the disposition of any proceeds of the sale remaining after the death of Earl and Lillian, or as to the treatment of such proceeds under their wills. There is no allegation or showing that either Bedient or Ward made any representations, promises, or statements to Marvin as to this issue, or that they concealed any material information from him. From our review of the record, we conclude that there is no genuine issue of material fact regarding Marvin's allegation of estoppel.

## CONCLUSION

For the reasons set forth, we conclude that the specific devise of the ranch property in the last will and testament of Lillian was adeemed by its sale during her lifetime and that Bedient and Ward, as devisees of Lillian's residuary estate, were not estopped from asserting the ademption by implied revocation resulting from the sale. Because the record reflects no dispute as to any facts material to these issues, the county court did not err in overruling the motion for summary judgment filed by Marvin, or in granting summary judgment in favor of Bedient and Ward pursuant to their motion. The judgment of the county court is therefore affirmed.

AFFIRMED.