# IN THE SUPREME COURT OF IOWA

No. 39 / 05-1534

Filed April 27, 2007

IN THE MATTER OF THE ESTATE OF HESTER
MARY LEWIS ANTON, Deceased,

GRETCHEN COY,

      Appellant,

vs.

NANCY R. EZARSKI, Fiduciary of the
Estate of HESTER MARY LEWIS ANTON,

      Appellee.

_____

Appeal from the Iowa District Court for Story County, Timothy J. Finn, Judge.

Specific devisee whose claim against estate was denied seeks further review of court of appeals decision affirming adverse district court judgment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

Michael J. Houchins of Zenor, Houchins & Borth, Spencer, for appellant.

Stephen J. Howell of Newbrough, Johnston, Brewer, Maddux & Howell, L.L.P., Ames, for appellee.

**APPEL, Justice.**

In this case, we consider whether the sale of certain property by an attorney-in-fact prior to the death of the testator resulted in ademption of a specific property bequest. The district court found that under the facts and circumstances presented, the bequest was adeemed. The court of appeals affirmed. For the reason set forth below, we reverse.

### I.    FACTUAL BACKGROUND.

In 1972, the testator, Hestor Mary Lewis Anton (Mary), married Herbert Anton, the father of Gretchen Coy. It was the second marriage for both Herbert and Mary. During this marriage, Gretchen, Mary's stepdaughter, deeded a piece of real property to her stepmother and father. Herbert and Mary built a duplex on the property. After the death of Herbert in 1976, Mary became the sole owner of the duplex property.

In 1981, Mary executed a will. In the will, she bequeathed half of her interest in the duplex to Gretchen. The remaining half interest was bequeathed to her biological son, Robert Lewis. Mary bequeathed the remainder of her estate to Robert and her daughter, Nancy Ezarski.

In 1986, Mary was involved in a serious automobile accident. After the accident, she lived in a series of nursing homes. For a short period of time, she lived in a nursing home called Riverside. Thereafter, she moved to Green Hills Health Center in Ames, where she had a private suite. Among other things, Mary suffered from Huntington's Chorea, a malady that impacts the nervous system.

Shortly after the accident, Mary executed a durable power of attorney authorizing her daughter Nancy to manage her financial affairs. The power of attorney took effect immediately. The document was a "durable" power of attorney: it explicitly stated that it would remain in full force and effect

until Mary's death and would be unaffected by any mental or physical disability that might occur after its execution.

From 1986 until Mary's death on December 2, 2003, Nancy handled her mother's financial affairs. There is no evidence in the record indicating that Nancy did anything improper in connection with Mary's assets.

On Memorial Day 1998, Nancy and her mother discussed selling the family residence to provide her mother with necessary support. After this conversation, staff at the nursing home advised Nancy that she should not discuss financial matters with her mother as it would exacerbate her condition and cause distress. As a result of this input from nursing home staff, Nancy and her mother had no further discussions regarding her financial affairs.

Nancy, acting as attorney-in-fact, began selling her mother's assets in order to pay her ongoing living expenses. Mary was generally aware her assets were being sold off to pay for her expenses. Her only concern was that she would have enough money to continue living at Green Hills. There was, however, no evidence that Mary was ever aware that the duplex was sold.

By 2003, the only asset remaining in Mary's estate was the duplex. The combined income from that asset and from her husband's trust was insufficient to meet her ongoing expenses. At this point, Nancy listed the duplex property for sale. Nancy then received a call from Gretchen's son, who informed Nancy of the terms of Mary's will and told her she could not sell the duplex.

In light of the phone call from Gretchen's son, Nancy took the duplex off the market and contacted an attorney, who issued an opinion stating that Nancy had the power and authority to sell the duplex. The attorney

also advised, however, that the trustee of the Harold R. Lewis Trust had the discretion to distribute the principal of the trust to Mary for her health, well-being, and maintenance. Nancy then contacted the trust officer at First National Bank to inquire about obtaining a loan from the trust. She was informed that the bank preferred that all of Mary's assets be sold prior to invading the trust's principal. As a result, Nancy believed she had no other choice but to sell the property, which was accomplished on August 28, 2003.

The evidence in the record regarding Mary's capacity at the time of the sale is thin. Nurses' notes indicate that on April 16, 2003, Mary had "periods of confusion." A social service progress note dated October 9, 2003, six weeks after the sale, makes reference to "advanced dementia." Nancy herself appeared to have concerns regarding Mary's mental state. Nancy indicated in a phone conversation with Gretchen Coy in June 2003 that Mary "sleeps almost all the time." The letter to Nancy from the estate's attorney recalled Nancy's indication that Mary was not competent to handle her affairs at the time the sale of the duplex was being considered. At trial, however, Nancy testified that her mother was "not incompetent" at the time of the duplex's sale.

The net proceeds of the duplex's sale were $133,263. Nancy began to pay Mary's living expenses out of the proceeds. At the time of Mary's death, the remaining balance was $104,317.38.

## II. PRIOR PROCEEDINGS.

After Mary's death, Gretchen filed a claim with the estate, asserting that she was entitled to $72,625 because of the specific bequest of the duplex in Mary's 1986 will. Nancy, acting as executor of the estate,

disallowed the claim. Gretchen then proceeded to file a claim in probate court.

The estate moved for summary judgment. The estate argued that at the time of the duplex's conveyance, Mary was not under a guardianship of any kind. The estate further asserted that all other assets previously held by Mary had been liquidated, and that the trustee of the Harold R. Lewis Trust had refused to advance funds from the trust's principal to pay for Mary's expenses as long as there were other assets that could be liquidated. As a result, the estate argued that the specific bequest of the duplex had been adeemed by extinction because it was no longer in the estate.

Gretchen countered the motion for summary judgment by asserting that there was a question of fact regarding Mary's intention in connection with the sale of the duplex. Gretchen cited the conversation she had with Nancy in June 2003, in which Nancy indicated that Mary "sleeps almost all the time." Gretchen argued that the only clear evidence of Mary's intent was the original will. Gretchen asserted that at no time did Mary ever indicate to her an intention to alter the terms of her will. Based on this evidence, Gretchen urged the court to deny the estate's motion for summary judgment.

On March 29, 2005, the district court denied the estate's motion for summary judgment. The court noted that the summary judgment record shows little, if anything, about whether Mary was consulted about the sale of the duplex and whether she was able to understand her financial circumstances. The court found that there was a genuine issue of material fact as to the mental state of Mary at the time of the duplex's sale and her involvement, if any, in the decision leading up to the sale.

The matter came to trial on August 10, 2005. On August 25, 2005, the district court entered an order denying Gretchen's claim. The district court determined that although Mary's mental abilities were diminishing over the last months of her life and by October 2003 she was suffering from dementia, these facts were irrelevant due to Iowa Code section 633.705(1) (2003), which provides in relevant part:

> All acts done by the attorney in fact or agent pursuant to the power during any period of disability or incompetence . . . have the same effect and inure to the benefit of and bind the principal and the principal's heirs, devisees and personal representatives as if the principal were alive, competent and not disabled.

As a result of this statute, the district court reasoned that the power of attorney was not affected even if Mary was disabled or incompetent at the time of the sale of the duplex.

The district court further noted that under these facts, Mary was well aware of the general plan for her support. The district court found that given the choice, Mary's intent was clear and established: she preferred to sell the assets and remain cared for in the nursing home. As a result, the district court held that the specific bequest in Mary's will was adeemed by Nancy's sale of the duplex.

Gretchen appealed the decision of the district court, and the matter was transferred to the court of appeals. The court of appeals affirmed, noting that Nancy had power of attorney which was unaffected by any mental disability that Mary may have had at the time the duplex was sold. The court of appeals adopted the trial court's finding that the sale of the duplex was clearly a part of the testator's intent and plan, which had been implemented over the course of several years. As a result, the property was adeemed by its sale. We granted further review.

### III.  STANDARD OF REVIEW.

The matter is in equity.  Review of a determination in equity of the rights and obligations of parties to property devised under a will is de novo under Iowa Code section 633.33.  *Gustafson v. Fogleman*, 551 N.W.2d 312, 314 (Iowa 1996).  Weight is given to the trial court's findings of facts, especially those involving witness credibility, but this court is not bound by the district court's findings or conclusions of law.  *In re Estate of Gearhart*, 584 N.W.2d 327, 329 (Iowa 1998).

### IV.  LEGAL BACKGROUND.

#### A.  Iowa Approach to Ademption.

What happens when a testator makes a specific bequest of property in a validly executed will, but the property is missing from the estate at the time of death?  The doctrine of ademption by extinction has been developed to address some of the difficulties that arise under these circumstances.  Ademption generally means "a taking away," and, in the context of the law of wills, refers to the removal or elimination of a specific bequest prior to the time of death.  Joseph Warren, *The History of Ademption*, 25 Iowa L. Rev. 290, 292 (1940).

In the early twentieth century, this court adopted the identity theory of ademption.  *In re Will of Miller*, 128 Iowa 612, 617, 105 N.W. 105, 106-07 (1905), *overruled in part by Newbury v. McCammant*, 182 N.W.2d 147, 149 (Iowa 1970).  Under the identity rule, if specifically bequeathed property was not found in the estate at the time of death, the bequest was adeemed.  Subsequent to *Miller*, this court routinely applied the identity rule in a number of similar contexts.  *In re Estate of Bernhard*, 134 Iowa 603, 112 N.W. 86 (1907); *In re Estate of Keeler*, 225 Iowa 1349, 282 N.W. 362 (1938); *In re Estate of Sprague*, 244 Iowa 540, 57 N.W.2d 212 (1953).  Beginning in

the 1960s, however, this court began to depart from the rigid application of the identity theory in all settings.

For example, in *In re Estate of Bierstedt*, 254 Iowa 772, 119 N.W.2d 234 (1963), this court considered whether the sale by a guardian of specifically bequeathed real estate without the knowledge and consent of an incompetent testator caused ademption by extinction under the identity rule. In this case, the court rejected application of a "rigid identity rule" and applied what it called a "modified intention" approach. The court noted that the order establishing the guardianship demonstrated that Bierstedt was incompetent at the time the land was sold, thereby creating a presumption of lack of testamentary capacity. *Bierstedt*, 254 Iowa at 774, 119 N.W.2d at 235. As a result, because the testator did not have the testamentary capacity to, in effect, work a change in the will, the sale could not be considered to manifest an intention on the part of the testator to modify the will. Therefore, no ademption occurred. The court in *Bierstedt* expressly noted, however, that the rulings in *Keeler*, *Sprague*, and *Bernhard*, where competent testators themselves had sold or otherwise disposed of specific devises and bequests, "are sound and we adhere to them." *Id.* at 238.

Similarly, in *In re Estate of Wolfe*, 208 N.W.2d 923 (1973), this court considered whether the destruction of property which was the subject of a specific bequest, contemporaneous with the death of the testator, worked an ademption. In this case, the testator had specifically bequeathed his automobile, a 1969 Buick Electra, to his brother. The testator was killed in an automobile accident in which his automobile was a total loss. Insurance proceeds that included the value of the auto were paid to the estate. The brother claimed he was entitled to the proceeds. In holding for the brother and against the estate, the court rejected the identity rule and emphasized

that the intent of the testator is paramount in determining whether an ademption has occurred. *Id.* at 924. As a result, the court reasoned that where property is missing from the estate because of some act or event involuntary as to the testator, there is no ademption. *Id.*

In summary, our cases hold that the identity rule will not be rigidly applied in all cases. Under what the court has called the "modified intention theory," the identity rule will not be applied to cases where specifically devised property is removed from the estate through an act that is involuntary as to the testator. This includes cases where the property is sold by a guardian, or conservator, or is destroyed contemporaneously with the death of the testator. Until now, however, we have not had occasion to consider whether ademption occurs when specifically devised property is sold by an attorney-in-fact.

**B.    Ademption Cases in Other States Involving Sales of Specifically Devised Property by Attorneys-in-Fact.**

At common law, a power of attorney was revoked by the incapacity of the principal. The durable power of attorney was created to avoid the common law result and provide persons with limited means a cost-effective alternative to guardianship proceedings. All fifty states have now enacted statutes authorizing durable powers of attorney. Carolyn L. Dessin, *Acting As Agent under a Financial Durable Power of Attorney: An Unscripted Role,* 75 Neb. L. Rev. 574, 575-80 (1996).

While there are many cases in other states involving acts of court-appointed guardians where the testators are incompetent, there are only a few cases dealing with the question of whether acts of an agent pursuant to a durable power of attorney cause ademption of specific bequests. The cases have not reached uniform results.

The first case dealing with the question is *In re Estate of Graham*, 533 P.2d 1318 (Kan. 1975). In this case, a specific devise of real estate was sold by an agent pursuant to a power of attorney to support the testator's stay in a rest home. After the death of the testator, the beneficiary of the specific bequest sought the balance of the proceeds remaining in the estate.

The Kansas Supreme Court held that no ademption occurred. The court emphasized that the devise was not conveyed with the full knowledge and consent of the testator during his lifetime. *Id.* at 1321. The court noted that it seemed logical that the same legal principles should apply to a conveyance by an attorney-in-fact acting under a power of attorney as are applicable to the acts of a guardian. *Id.* The court noted that were the rule otherwise, an attorney-in-fact hostile to one of the beneficiaries may adeem a gift through the sale of specifically devised property. *Id.* at 1322. The court emphasized, however, that the beneficiary was entitled only to the unexpended balance of the proceeds of specifically devised property. *Id.*

The Ohio Supreme Court considered this question in *In re Estate of Hegel*, 668 N.E.2d 474 (Ohio 1996). In this case, Hegel sold the principal's house after she had become incompetent pursuant to a durable power of attorney. The principal's will devised the house to Hegel. Upon the principal's death, Hegel claimed entitlement to the cash proceeds of the sale that remained in the principal's estate. The probate court held that the devise had been adeemed by extinction. On appeal, the Court of Appeals of Ohio reversed in a 2-1 decision.

The Ohio Supreme Court reversed the court of appeals in a 4-3 decision and held that the specific devise was adeemed. The majority emphasized that while the Ohio legislature had passed a nonademption statute in regard to the actions of court-appointed guardians, it did not

extend the rule to agents acting under durable powers of attorney. *Id.* at 477-78. The majority further noted that it did not regard those acting under powers of attorney as the same as guardians. The majority indicated that attorneys-in-fact have more freedom and can act without court approval as the principal's alter ego. *Id.* at 478.

The dissenters emphasized that the critical factor was the testator's incapacity at the time of sale, not whether the sale was made by a guardian or by agent pursuant to a power of attorney. *Id.* at 478-80. One dissent emphasized that attorneys-in-fact are a recent occurrence and are often encouraged by estate planners and counselors as a way of avoiding judicial supervision. Further, the dissent argued that under the approach of the majority, an agent could manipulate the sale of property for his or her own benefit.

Relying on the Ohio precedent, the Supreme Court of Nebraska recently held that the sale of a specific devise by an attorney-in-fact resulted in ademption. *In re Estate of Bauer*, 700 N.W.2d 572, 578-79 (Neb. 2005). As in Ohio, the Nebraska legislature adopted an exception to ademption for the sale of property by a conservator or guardian, but not by attorneys-in-fact. In light of the specific action of the legislature exempting actions of conservators and guardians from ademption, the Nebraska Supreme Court refused to extend the exemption "by judicial fiat." *Id.* at 579. Further, the Nebraska Supreme Court cited a Nebraska statute that is virtually identical to Iowa Code section 633.705(1), which states that acts done by an attorney-in-fact pursuant to a durable power of attorney bound the principal and successors in interest as if the principal were competent and not disabled. *Id.* The court reasoned that under this statute, ademption

necessarily results from the acts of an attorney-in-fact pursuant to a durable power of attorney.

### V. ANALYSIS.

Although the identity rule has been subject to substantial criticism and has been abandoned or substantially altered in the Uniform Probate Code and the Restatement (Third) of Property, neither party questioned its continued vitality either in the district court or on appeal. *See* Unif. Probate Code § 2-606 (1997) (adopting " 'intent' theory" of ademption); Restatement (Third) of Prop.: Wills and Other Donative Transfers § 5.2(c) (1999) (specific devise fails if property is not in estate "unless failure of devise would be inconsistent with testator's intent"). Instead, the parties have focused on whether Mary was competent at the time of sale and whether the rule in *Bierstedt* should be extended to cases involving attorneys-in-fact. In this posture, we do not examine the continued vitality of the identity rule, but simply apply the principles established in our case law to the facts of this case. For the reasons expressed below, we hold that the sale of the duplex by an attorney-in-fact under the circumstances presented did not result in ademption of the bequest.

### A. Effect of Sale of Specifically Devised Property by Attorney-in-Fact if Mary was Incompetent at Time of Sale.

If Mary was incompetent at the time of sale of the duplex, the act would clearly be involuntary as to her. The question then arises whether the rule in *Bierstedt* should be extended to cases involving the sale of specifically devised property by an attorney-in-fact, *In re Estate of Graham*, 533 P.2d at 1321, or whether the extension should be rejected. *In re Estate of Hegel*, 668 N.E.2d at 478; *In re Estate of Bauer*, 700 N.W.2d at 579.

We follow the approach in *In re Estate of Graham*. It is true, however, that there are some differences between the appointment of a guardian by a court and the selection of an agent with durable power of attorney by a competent testator prior to the onset of any mental infirmity. For example, in the case of the execution of a durable power of attorney, the principal has the power to choose the agent and to approve the scope of the agent's powers.

The rationale of *Bierstedt*, however, is that ademption does not occur when specifically devised property is sold as a result of acts that are involuntary to the testator. The rationale of our cases is that ademption occurs where a testator had knowledge of a transaction involving a specific devise, realizes the effect of the transaction on his or her estate plan, and has an opportunity to revise the will. Where these elements are not present, no ademption occurs. The focus of analysis is on the testator and whether the testator has made a deliberate decision not to revise the will, and not on the nature of the agency causing the involuntary act. *Bierstedt*, 254 Iowa at 775-76, 119 N.W.2d. at 236-37; *Wolfe*, 208 N.W.2d at 925.

The legal contexts of *In re Estate of Hegel* and *In re Estate of Bauer* are distinguishable. In these cases, the legislature had stepped in to amend the probate code to specifically exclude acts of guardians from the rule of ademption. The legislative failure to exclude acts of agents pursuant to durable powers of attorney was found to be significant. The Iowa legislature, however, has not taken action similar to that of the legislatures in Ohio and Nebraska.

The Iowa legislature has, of course, enacted Iowa Code section 633.705(1). The district court held that if, in fact, Mary was disabled or incompetent at the time of the sale of the duplex, section 633.705(1) would

cause the specific bequest of the duplex to fail as a result of ademption because the act of the attorney-in-fact would have the same force and effect as the act of the testator.

We do not agree. Iowa Code section 633.705(1) is a variant of Uniform Power of Attorney Act section 2 (1979), which has been incorporated into the Uniform Probate Code sections 5-01, 5-02 (1997). As indicated above, the purpose of the provision is to change the common law rule that the mental disability of the principal terminated the agency relationship. Gregory S. Alexander, *Ademption and the Domain of Formality in Wills Law*, 55 Alb. L. Rev. 1067, 1070 (1992). In other words, a purchaser of real estate or other property can be assured clear title when dealing with a duly appointed agent operating pursuant to a valid durable power of attorney.

Our view that section 633.705(1) does not determine whether ademption occurs when property is sold by an agent acting pursuant to a durable power of attorney is supported by the language of the statute. Under section 633.705(1), "acts" of the agent are binding on third persons, including heirs. Here, the agent has not acted to cause an ademption, but only to cause the sale of property. This act—namely the sale of the property—is indeed binding on third parties, including heirs. The statute, however, is silent on the issue of who is entitled to the proceeds of the sale where the principal has made a specific bequest in a will and where identifiable proceeds are found in the estate.

**B.** **Effect of Sale of Specifically Devised Property by Attorney-in-Fact if Mary was Competent at Time of Sale.**

In the alternative, assuming that Mary was competent at the time of the duplex's sale, the question arises as to whether an ademption should

occur based, not upon the act of the attorney-in-fact in selling the property, but upon the intent of the testator expressed prior to the sale. Specifically, the estate claims that Mary on Memorial Day 1998 knew that her assets would need to be sold for her support and specifically approved of the sale of her residence by her attorney-in-fact. There appears to have been no specific discussion, however, of the sale of the duplex at any time. Further, it is conceded that Mary had no knowledge of the actual sale of the duplex over five years later. Nancy simply sold it without telling her mother in order to avoid aggravating her condition.

We do not question the wisdom of Nancy's decision to sell the property without consulting Mary. Our only concern is the legal consequences that flow from it. This case thus raises the question of what result should occur where the principal is competent, but the attorney-in-fact sells a specific devise without the knowledge of the testator.

If Mary was aware of the transaction, was aware of the impact the transaction had on her estate plan, and did not change her will, ademption would, of course, occur under the identity theory. Here, however, Mary only had a general knowledge that assets may need to be sold for her support at some time in the future. This is simply not the same as contemporaneous knowledge that an asset that is subject to a specific devise has, in fact, been removed from the estate. Most ordinary persons would not run down to the lawyer's office to change their will in light of a remote future contingency that has not been specifically discussed and which may or may not occur in the future. An expression of intent in the indefinite future to sell assets for support is not sufficient to cause ademption under our "modified intention theory" where the testator is not aware that the specific action has taken place. *See* Restatement (Third) of Agency: Knowledge Requisite to

Ratification § 4.06 (2006) (ratification of acts of principal requires full knowledge of underlying transaction); *Ellwood v. Mid States Commodities, Inc.*, 404 N.W.2d 174, 179 (Iowa 1987).

It is true that Nancy did not sell the duplex until all other sources of revenue had been exhausted for her mother's support. It may well be that, under the circumstances, her mother would have assented to the sale of the duplex in 2003 had she been asked. But under our cases, the relevant issue is not whether Mary would have assented to the sale had she been asked, but rather whether Mary had the opportunity to change her will once she knew that the duplex was no longer part of her estate. Under the record here, she simply did not have that opportunity.

There remains a question of remedy. Gretchen seeks to recover $72,625, or half the proceeds realized upon the sale of the duplex. Some courts have held that where ademption does not occur, the devisee is entitled to the entire value notwithstanding the fact that the proceeds may have been used for the care of the testator. *In re Estate of Mason*, 397 P.2d 1005, 1007 (Cal. 1965). We have considered the issue, however, and have held that in cases where specific devises are removed from the estate as a result of an involuntary act, the devisee is entitled only to the proceeds which have not been expended on the support of the testator. *Stake v. Cole*, 257 Iowa 594, 599-600, 133 N.W.2d 714, 717 (1965). We see no reason to depart from Iowa precedent. As a result, Coy is entitled to $52,158.69.

### VI.   CONCLUSION.

For the reasons expressed above, we hold that under the facts and circumstances of this case, the sale of the duplex did not cause ademption to the extent that there were specifically identifiable proceeds in the estate at the time of death. The decision of the court of appeals is vacated, the

district court judgment is reversed, and the matter is remanded to the district court for proceedings not inconsistent with this opinion.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**

All justices concur except Hecht, J., who takes no part.